UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

FRANKLIN PIERCE COLLEGE,

        Plaintiff

v.

DMA/DIGERONIMO-MIKULA
ASSOCIATES, LLC, and DIGERONIMO
ASSOCIATES, LTD.

        Defendant

CIVIL DOCKET # _____

## 05-40121FDS

## COMPLAINT

Plaintiff, Franklin Pierce College, brings this Complaint against Defendant, DiGeronimo Associates, Ltd and DMA/DiGeronimo-Mikula Associates, LLC, for direct and consequential damages caused by the Defendant's breach of their consulting agreement and negligent professional services in connection with the creation and installation of two new synthetic-turf athletic fields at Franklin Pierce College in the summer of 2004.

### PARTIES

1.     Plaintiff, Franklin Pierce College ("Franklin Pierce"), is a New Hampshire Corporation with a principal place of business in Rindge, New Hampshire.

2.     Defendant, DMA/DiGeronimo-Mikula Associates, LLC ("DMA") and defendant, DiGeronimo Associates, Ltd. ("DA") (collectively, the "Defendants"), are both, upon information and belief, Massachusetts corporations with principal places of business at 5 Apple Lane, Sturbridge, Massachusetts.

RECEIPT # 404617
AMOUNT $ 280.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK. _____
DATE 1-26-05

## JURISDICTION

3.     This Court has jurisdiction of this matter pursuant to 28 USC § 1332(a).

4.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## FACTUAL ALLEGATIONS

### The Project

5.     Franklin Pierce required the construction of two new athletic fields because the preexisting soccer and baseball fields overlapped, making it impossible to use the fields simultaneously.  In addition, the rapid melting of early-fall and late-spring snow regularly left both fields waterlogged and unusable.  This limited the outdoor athletic seasons at the college.

6.     Therefore, in 2004 Franklin Pierce endeavored to construct two new synthetic turf athletic fields.  These new fields included one baseball field and one multi-purpose soccer field – separate from each other and both laid with synthetic turf (the "Project").

### Agreement for Project Consultation and Construction Management

7.     In early 2004, Joseph W. DiGeronimo ("DiGeronimo"), on his own reconnaissance and as an agent for Defendants, contacted Franklin Pierce representative Bruce Kirsh ("Kirsh") in order to try and market and sell the Defendants' professional consulting services to Franklin Pierce.

8.     DiGeronimo boasted over several conversations that the Defendants were the leading turf consultants in the Northeast.  DiGeronimo represented that he could leverage his relationships with the primary turf vendors and site-work contractors in the industry in order to obtain superior pricing for Franklin Pierce.

2

9.     In these same pre-agreement discussions, DiGeronimo further advised Franklin Pierce that the business of turf installation and site-work contracting was a "dirty business" and that the college should have someone like himself and the Defendants assisting them.

10.     DiGeronimo also represented that the Defendants could provide specialized engineering consultation for numerous aspects of the pre-construction phase of the Project, as well as construction monitoring throughout all phases of the site-work construction and turf installation.

11.     DiGeronimo made these representations in order to induce Franklin Pierce to use the Defendants' services.

12.     After these discussions, and on or about February 24, 2004, DiGeronimo submitted to Franklin Pierce a <u>Proposal for Athletic Field Facilities Consultant</u> (the "Proposal"). A true and accurate copy of the Defendants' <u>Proposal for Athletic Field Facilities Consultant</u> is attached hereto as Exhibit A.

13.     Under the Proposal, one or both Defendants agreed to render specialized professional consulting services upon which the Defendants intended both Franklin Pierce and its project engineer to rely.  For example, the Defendants proposed to leverage their expertise and add value by providing initial site evaluations, assistance to the project engineer in developing technical drawings and specifications, consultation for options regarding various turf products (*i.e.,* types of drainage systems, artificial turfs, etc.), and both preliminary and final budget estimates for the Project.  *See* Exhibit A, ¶¶ A, B.  The Defendants' Proposal also offered to provide construction monitoring during the life of the Project.  *See id.,* ¶ C.  Construction monitoring included, but was not limited to, supervising each phase of construction for proper compliance to plans and specifications, assistance with weekly job meetings to maintain project

3

harmony and schedule, submission of weekly construction reports, review and comment on all shop drawings submitted by the site-work contractor, coordination of all Project functions as between Franklin Pierce's Building Committee, Administration, and the site-work contractor, and maintaining a physical presence on the Project at least two times per week throughout the life of the Project in order to appropriately monitor and supervise progress. *See id.*, p. 2-3.

14.    DiGeronimo and Franklin Pierce discussed the Proposal and verbally agreed to certain modifications on or about March 3, 2004. Shortly thereafter, these agreed-upon changes were written in the margin by Franklin Pierce and the Proposal was faxed back to the Defendants, along with a copy of a Franklin Pierce purchase order. The Defendants received the fax and thereafter began working under its terms. By these actions the parties entered into an agreement for the Defendants' professional consulting services on the Project (the "Contract"). A true and accurate copy of the Contract is attached hereto as Exhibit B.

15.    DiGeronimo knew at all times relevant to the Project that Franklin Pierce had never taken on such a specialized turf project and that Franklin Pierce would rely on the Defendants' site-work and turf-specific engineering advice.

16.    DiGeronimo also knew at all times relevant to the Project that Franklin Pierce's project engineer was not a turf specialist and would rely on the Defendants' site work and turf-specific engineering advice.

## DMA's Advice Regarding Project Site-Work

17.    H.E. Contracting, Inc. ("HEC or "Project Contractor") was engaged by Franklin Pierce to perform all the site work required for the installation of the new athletic fields. HEC's work included, but was not limited to, demolition of existing conditions (*i.e.*, cutting and removing trees and stumps from the site), clearing and grubbing, erosion control, design of synthetic field subdrains and typical sections, furnishing and installing of storm drainage,

4

providing and installing earthen-base materials (including gravel subbase), loaming and seeding certain areas outside the playing surfaces, providing and installing curbing to enclose playing fields, and all other earthwork and installation of drainage systems that would be required to prepare the site for the installation of the synthetic turf by others.

18.    HEC's Contract price for the work was $625,000.

19.    HEC requested that Franklin Pierce pay HEC 60% of the price up front (*i.e.,* $375,000) for the purpose of purchasing materials and renting equipment related to the Project.

20.    Knowing that Franklin Pierce was depending upon its professional advice, the Defendants advised that such a substantial up-front demand was a standard course of dealing in the turf industry and should be paid.  In fact, an up-front payment of 60% of the contract value for a commercial site-work construction project is not a standard course of dealing, but is, instead, highly unusual, which the Defendants knew or should have known.

21.    Relying on the Defendants' advice, Franklin Pierce paid HEC $375,000 on or about June 11, 2004, approximately one week after HEC had commenced work.

22.    HEC ultimately breached its Contract with Franklin Pierce by performing defective and untimely work and by abandoning the Project on August 25, 2004.

23.    HEC never finished $375,000 worth of work.

24.    Moreover, and on information and belief, HEC never applied Franklin Pierce's up-front payment of $375,000 to Project costs and expenses.  For example, HEC left many subcontractors unpaid and Franklin Pierce has been forced to pay at least $230,881.10 to the same.

25.    Throughout the course of the Project, Franklin Pierce and its project engineer raised numerous concerns about the quality and pace of HEC's performance.  The Defendants

acknowledged the validity of these concerns in certain email correspondence and phone conversations. Despite knowing the poor quality and untimeliness of HEC's work, DiGeronimo advised Franklin Pierce that HEC should not be terminated and that HEC was able to perform the work. On this advice, Franklin Pierce continued to allow HEC to perform – an action that ultimately and proximately caused larger unpaid subcontractor bills and increased the number of defects on the Project.

26.     Franklin Pierce expended at least an additional $328,436.75 to correct HEC's defective work.

27.     The Defendants owed a certain standard of care to Franklin Pierce with regard to its professional consulting services – particularly when they knew Franklin Pierce was so dependent upon their advice. The Defendants breached this duty of care by negligently recommending that that Franklin Pierce pay HEC 60% of its Contract value up front. This negligent advice proximately caused Franklin Pierce to contract with an illiquid site work contractor that, upon information and belief, needed Franklin Pierce's $375,000 for previous debts, expenses, and other uses unrelated to the Project. Without rendering $375,000 worth of value to Franklin Pierce and leaving unpaid subcontractors in excess of $230,000, the Defendants' advice proximately caused damage to Franklin Pierce by at least $375,000.

### Breach of the Consulting Contract

28.     The Defendants failed to provide adequate "Construction Monitoring" as described under the Contract. In particular, and by way of example only, the Defendants failed to "[m]onitor each phase of construction for proper compliance to plans and specifications" and "[c]oordinate all functions with the Committee, Administration and Contractor" when it left Franklin Pierce to deal with HEC just hours prior to HEC's abandonment on August 25, 2004,

and when it failed to respond to Franklin Pierce's daily calls for ten (10) days thereafter -- all during a critical time when the Project was falling apart.

29.    The Defendants committed other breaches of the Contract prior to HEC's abandonment on August 25, 2004. By way of example only, DiGeronimo knew in July and early August that HEC was performing defective and untimely work, but failed to take the appropriate measures to deal with HEC or advise Franklin Pierce as to what its action should be taken to ensure proper compliance with the plans and specifications. Additionally, the Defendants failed to successfully monitor the site-work phase of construction when it failed to visit the Project at least two (2) times per week and failed to increase its presence at the urging of Franklin Pierce. The Defendants also failed to issue weekly construction reports and had little impact, if any, in "maintain[ing] project harmony and schedule" at weekly construction meetings.

30.    The Defendants' failure to provide adequate "Construction Monitoring" caused HEC's defective and untimely work to continue throughout July and August. This resulted in over $900,000 of remedial and "time and material" completion costs in order to finish the Project on time.

31.    Franklin Pierce and the Defendants did not sever their relationship under the Contract prior to September 9, 2004.

## Count I
## (Professional Negligence)

32.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 1 through 31 as if fully set forth and stated herein.

33.    The Defendants owed a duty to render professional consulting services in accordance with the proper standard of care.

34.    The Defendants negligently breached this duty when they carelessly and negligently advised Franklin Pierce to pay 60% up front to HEC and failed to advise Franklin Pierce that HEC's contract should be terminated or that Franklin Pierce should take other appropriate action to protect its interests vis-à-vis HEC.

35.    The Defendants' negligent professional services and advice are the proximate cause of damages sustained by Franklin Pierce:  namely, Franklin Pierce had little or none of its $375,000 applied to the Project by HEC, and HEC's negligently-monitored work resulted in physical defects to the Project requiring Franklin Pierce to pay at least an additional $328,436.75 to remediate.

## Count II
## (Breach of Contract)

36.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 1 through 35 as if fully set forth and stated herein.

37.    Franklin Pierce and the Defendants entered into a Contract by which the Defendants would render certain professional services, including construction monitoring, throughout the entire life of the Project.

38.    All obligations of Franklin Pierce that may be conditions precedent to Franklin Pierce's performance under the Contract have been satisfied.

39.    The Defendants breached the Contract when they failed to, among other things: (1) adequately monitor and regulate HEC's work to ensure proper compliance with the plans and specifications, (2) submit weekly construction reports, (3) regularly attend the jobsite, and (4) satisfactorily coordinate all functions with Franklin Pierce's Building Committee and Administration.

40.     As a direct and proximate result of the Defendants' multiple breaches, Franklin Pierce was damaged by HEC's continued prosecution of unchecked and/or inadequately managed defective work that resulted in hundreds of thousands of dollars of remediation costs by the college.

WHEREFORE, Plaintiff, Franklin Pierce College, prays that this Court

a.     Enter judgment in favor of Franklin Pierce on Count I (Professional Negligence), thereby awarding Franklin Pierce its damages, both punitive and compensatory, including all interest and costs; and

b.     Enter judgment in favor of Franklin Pierce on Count II (Breach of Contract), thereby awarding Franklin Pierce its damages, including all interest and costs; and

c.     Enter judgment in favor of Franklin Pierce for such other and further relief as this Court deems just.

## JURY DEMAND

Franklin Pierce hereby demands a jury trial on all counts.

Respectfully submitted,

**FRANKLIN PIERCE COLLEGE**

By its attorneys,

**HOLLAND & KNIGHT LLP**

Stanley A. Martin, BBO #543957
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: July 25, 2005

# 3004371_v1
100372.00003





# DMA

## DiGeronimo-Mikula Associates, LLC

P.O. Box 524 / 5 Apple HillRoad / Sturbridge, Massachusetts 01566 (508)347-5184 / FAX: (508)347-5911
Email: DGeronimo@aol.com          Website: www.DiGeronimoSports.Com

February 24, 2004

Mr. Bruce Kirsh, VP
Franklin Pierce College
20 College Road
Ridge, NH 03461

RE:    **Proposal for Athletic Facilities Consultant**

Dear Mr. Kirsh:

In following with our meeting on February 20, 2004, and pursuant to your needs for Sports Facilities Engineering Services regarding the design and construction monitoring of the athletic facilities, I would like to outline for you our professional services and some related fee structures as they pertain to the above referenced project.

Our services are available to the School at three options. From the initial consultation, allowing you to have an accurate cost and control of the scope of work, to the construction specifications and design to the final review of the work performed, DMA/Di Geronimo-Mikula Associates can answer all your needs to assure you of the successful project you are planning. Our representation on the project and knowledge of the industry will allow you to purchase the project and products at a reduce cost. This reduction is created by the successes of our designs over the past 33 years. Additionally, the industry has a founded trust in the work of DMA to allow them to offer more competitive pricing because they have a firmer understanding of your needs.

After review of the plans, your intended scope and desires, we can assist you through your entire program. The following will allow you to review our proposed services and fee structure.

### A. <u>INITIAL SITE EVALUATION AND CONSULTATION:</u>

1. Work with the established meeting dates for review of the project and meetings with Administration and Committees.
2. Inspection of site and review of initial needs.
3. Through multiple meetings, review of Owner's needs and desires.
4. Evaluate scope of construction and various products.
5. Review the Master Plan and incorporate the needs within this plan review.
6. Estimate project budget and alternatives.
7. Review the budget and options with the Administration and Building Committee.
8. Review of Initial costs and long-term maintenance projections over 20 years.
8. Develop preliminary facilities budget costs.
9. Review the preliminary budget costs as they relate to the final scope of work.
10. Develop final project costs.

**B.**    **CONSTRUCTION DOCUMENTS AND PROPOSAL SESSION**

1.    Review the Survey the existing site and conditions.
2.    Assist and Consult with your Engineer to establish a set of complete working drawings. We will redline and review all documents for complete value.
3.    Review the survey and proposed drainage plans for the scope of work. Additionally, provide the proposed fencing and crowd control plan. Assist in developing the technical specifications for:
   - Site work and earth balancing
   - Field drainage system and Drainage supplements for the adjacent
   - areas.
   - Athletic Fields  Subbase and Base construction.
   - Athletic Fields performance requirements for tolerance.
   - Athletic Fields Surface Specifications.
   - Athletic Fields Layout and Game line requirements.
4.    Through selected alternates, develop project budget and alternate costs.
5.    Review usage plan with the Building Committee and Administration.
6.    Review final plan usage.
7.    Refine final specifications to cover full construction documents.
8.    Reconfirm budget for project.
9.    Develop construction documents.

**CONSTRUCTION MONITORING**

1.    Establish pre-construction conference with all selected contractors and subcontractors.
2.    Monitor critical layout for proper compliance with specifications.
3.    Monitor each phase of construction for proper compliance to plans and specifications.
4.    Assist with weekly job meetings to maintain project harmony and schedule.
5.    Submit a weekly report of construction.
6.    Review and comment on all shop drawings submitted by Contractor.
7.    Coordinate all functions with the Committee, Administration and Contractor.
8.    Review and submit Contractor Payment Requests.
9.    Develop final punch list.
10.    Final walk through and acceptance with the Owner.
11.    Secure all guarantees.

FEE STRUCTURE:
**The total fee for the above phases will be a set amount of $12,000.00. Includes all travel and internal reimbursable.**

The critical timetable for this project and each phase is:
Phase A:    This report and budget can be completed in 18 days.
Phase B:    Upon assignment, the work will be complete and ready for bidding in 30 days, or as progess with your engineer .
Phase C:    If the project is awarded by May15, 2004, the work started on May 31, 2004, the Athletic Fields can be completed by September 15, 2004 and available for use.

As per you request, we are prepared to offer you the additional service of on-site construction supervision. This will allow us to be on site during the full time of construction. This phase will offer

our service and presence on the project a minimum of two (2) per week during the course of the project. The additional fee for this increased service will be $8,000.00.

Additionally, we will review you needs for work on the adjacent area to enlarge the Athletic Fields within this fee structure.

Our Design and Consulting program is based on a set fee basis, which includes all travel expenses and cost in-house related to the project. We do not expect a percentage of the construction cost. This allows DMA to perform all necessary tasks with the project and also allows the Owner a better review of project costs and possible alternate costs.

Whether you select an expensive all-weather surface, or a standard natural system, we are performing the same service. We do not expect a percentage of construction costs or alternates accepted. We have found that within the development of athletic facilities, **it is not the construction budget that is critical to our fee structure; it is the scope of the work.**

We have done work for many private schools such as: Salinas Schools, CA, City of Carlsbad, CA, Missouri Southern University, Fairfield University, CT, Villanova University, PA, Bucks Central School District, PA, East Haven, CT, Middletown, CT, Joel Barlow H.S. in Redding, CT, Paramus, NJ, Highland Park, North Brunswick, Pemberton, Newton, Edison School Districts, Hudson County Parks, Deerfield Academy, MA, Andover, MA, Exeter, NH, The Peddie School, NJ, The Hill School, PA, Friends Select, PA, The Hotchkiss School, CT, Girls' Prep, TN, Sidwell-Friends, WDC, Episcopal, VT, Gill-St. Bernard School, NJ, Loyola Academy, IL, Lexington Catholic, KY, Northfield-Mt. Herman, MA, and Williston-Northhampton, MA. We continue to service the White House in the needs for athletic projects since 1989. This work included the tennis courts at both the White House and Camp David for President Bush and the jogging at the White House for President Clinton.

We have been the sports facilities consultants for the California University System and Rutgers University Systems designing projects at the Newark and New Brunswick campuses. Additionally, we have consulted for the Tempe Union H.S. District for 15 years and Glendale High School District in Phoenix.

I look forward to hearing from you, as we are interested and available to assist in the completion of a successful project.

Sincerely,
**DMA/DI GERONIMO-MIKULA ASSOCIATES, LLC.**


Joseph W. DiGeronimo, Projects Manager


William J. Mikula, P.E., Projects Engineer





# DMA

## DiGeronimo-Mikula Associates, LLC

P.O. Box 524 / 5 Apple Hill Road / Sturbridge, Massachusetts 01566 (508)347-5184 / FAX: (508)347-5911
Email: DiGeronimo@aol.com          Website: www.DiGeronimoSports.Com

February 24, 2004

Mr. Bruce Kirsh, VP
Franklin Pierce College
20 College Road
Ridge, NH 03461

RE:    **Proposal for Athletic Facilities Consultant**

Dear Mr. Kirsh:

In following with our meeting on February 20, 2004, and pursuant to your needs for Sports Facilities Engineering Services regarding the design and construction monitoring of the athletic facilities, I would like to outline for you our professional services and some related fee structures  as they pertain to the above referenced project.

Our services are available to the School at three options. From the initial consultation, allowing you to have an accurate cost and control of the scope of work, to the construction specifications and design to the final review of the work performed, DMA/Di Geronimo-Mikula Associates can answer all your needs to assure you of the successful project you are planning. Our representation on the project and knowledge of the industry will allow you to purchase the project and products at a reduce cost. This reduction is created by the successes of our designs over the past 33 years. Additionally, the industry has a founded trust in the work of DMA to allow them to offer more competitive pricing because they have a firmer understanding of your needs.

After review of the plans, your intended scope and desires, we can assist you through your entire program. The following will allow you to review our proposed services and fee structure.

A.  **INITIAL SITE EVALUATION AND CONSULTATION:**
1.    Work with the established  meeting dates for review of the project and meetings with Administration and Committees.
2.    Inspection of site and review of initial needs.
3.    Through multiple meetings, review of Owner's needs and desires.
4.    Evaluate scope of construction and various products.
5.    Review the Master Plan and incorporate the needs within this plan review.
6.    Estimate project budget and alternatives.
7.    Review the budget and options with the Administration and Building Committee.
8.    Review of initial costs and long-term maintenance projections over 20 years.
8.    Develop preliminary facilities budget costs.
9.    Review the preliminary budget costs as they relate to the final scope of work.
10.    Develop final project costs.

Page 1 of  3

**B.**     **CONSTRUCTION DOCUMENTS AND PROPOSAL SESSION**
1.     Review the Survey the existing site and conditions.
2.     Assist and Consult with your Engineer to establish a set of complete working drawings. We will redline and review all documents for complete value.
3.     Review the survey and proposed drainage plans for the scope of work. Additionally, provide the proposed fencing and crowd control plan. Assist in developing the technical specifications for:
   - Site work and earth balancing
   - Field drainage system and Drainage supplements for the adjacent
   - areas.
   - Athletic Fields  Subbase and Base construction.
   - Athletic Fields performance requirements for tolerance.
   - Athletic Fields Surface Specifications.
   - Athletic Fields Layout and Game line requirements.
4.     Through selected alternates, develop project budget and alternate costs.
5.     Review usage plan with the Building Committee and Administration.
6.     Review final plan usage.
7.     Refine final specifications to cover full construction documents.
8.     Reconfirm budget for project.
9.     Develop construction documents.

**CONSTRUCTION MONITORING**
1.     Establish pre-construction conference with all selected contractors and subcontractors.
2.     Monitor critical layout for proper compliance with specifications.
3.     Monitor each phase of construction for proper compliance to plans and specifications.
4.     Assist with weekly job meetings to maintain project harmony and schedule.
5.     Submit a weekly report of construction.
6.     Review and comment on all shop drawings submitted by Contractor.
7.     Coordinate all functions with the Committee, Administration and Contractor.
8.     Review and submit Contractor Payment Requests.
9.     Develop final punch list.
10.     Final walk through and acceptance with the Owner.
11.     Secure all guarantees.

FEE STRUCTURE:
**The total fee for the above phases will be a set amount of $12,000.00. Includes all travel and internal reimbursable.**

The critical timetable for this project and each phase is:
Phase A:     This report and budget can be completed in 18 days.
Phase B:     Upon assignment, the work will be complete and ready for bidding in 30 days, or as progess with your engineer. *APRIL 15, 2004* (BY) (BY) *MAY 1, 2004*
Phase C:     If the project is awarded by ~~May 15, 2004~~, the work started on ~~May 31, 2004~~, the Athletic Fields can be completed by ~~September~~ 15, 2004 and available for use. (BK) *AUGUST*

As per you request, we are prepared to offer you the additional service of on-site construction supervision. This will allow us to be on site during the full time of construction. This phase will offer

*expressed upon by*
*Bruce Kimball* on
*D. Geronimo   3/3/0*

our service and presence on the project a minimum of two (2) per week during the course of the project. The additional fee for this increased service will be $8,000.00.

Additionally, we will review you needs for work on the adjacent area to enlarge the Athletic Fields within this fee structure.

Our Design and Consulting program is based on a set fee basis, which includes all travel expenses and cost in-house related to the project. We do not expect a percentage of the construction cost. This allows DMA to perform all necessary tasks with the project and also allows the Owner a better review of project costs and possible alternate costs.

Whether you select an expensive all-weather surface, or a standard natural system, we are performing the same service. We do not expect a percentage of construction costs or alternates accepted. We have found that within the development of athletic facilities, **it is not the construction budget that is critical to our fee structure; it is the scope of the work.**

We have done work for many private schools such as: Salinas Schools, CA, City of Carlsbad, CA, Missouri Southern University, Fairfield University, CT, Villanova University, PA, Bucks Central School District, PA, East Haven, CT, Middletown, CT, Joel Barlow H.S. in Redding, CT, Paramus, NJ, Highland Park, North Brunswick, Pemberton, Newton, Edison School Districts, Hudson County Parks, Deerfield Academy, MA, Andover, MA, Exeter, NH, The Peddie School, NJ, The Hill School, PA, Friends Select, PA, The Hotchkiss School, CT, Girls' Prep, TN, Sidwell-Friends, WDC, Episcopal, VT, Gill-St. Bernard School, NJ, Loyola Academy, IL, Lexington Catholic, KY, Northfield-Mt. Herman, MA, and Williston-Northhampton, MA. We continue to service the White House in the needs for athletic projects since 1989. This work included the tennis courts at both the White House and Camp David for President Bush and the jogging at the White House for President Clinton.

We have been the sports facilities consultants for the California University System and Rutgers University Systems designing projects at the Newark and New Brunswick campuses. Additionally, we have consulted for the Tempe Union H.S. District for 15 years and Glendale High School District in Phoenix.

I look forward to hearing from you, as we are interested and available to assist in the completion of a successful project.

Sincerely,
**DMA/DI GERONIMO-MIKULA ASSOCIATES, LLC.**


Joseph W. DiGeronimo, Projects Manager


William J. Mikula, P.E., Projects Engineer

# PURCHASE ORDER

**FRANKLIN PIERCE COLLEGE**
**COLLEGE ROAD, P.O. BOX 60**
**RINDGE, NEW HAMPSHIRE 03461-0060**

**H  030033**

THIS ORDER NUMBER MUST APPEAR ON ALL PACKAGES, INVOICES AND SHIPPING PAPERS.

**VENDOR:** DiGeronimo - Mikula Assoc.
PO Box 524/5 Apple Hill Rd.
Sturbridge, MA 01566

**BILL TO:**   FRANKLIN PIERCE COLLEGE
ACCOUNTS PAYABLE DEPT.
COLLEGE ROAD, P.O. BOX 60
RINDGE, NH 03461-0060

| DATE | REQUISITIONER | REQUISITIONER'S PHONE # | ACCT NUM - USE NINE DIGITS # | SIGNATURES |
|---|---|---|---|---|
| 3/3/04 | Kirsh | 603-899-4080 | 2.9710 | DEPT HEAD UP TO $1,000 |
| **FISCAL YEAR** 04-05 | | **REQUISITIONER'S FAX #** 603-899-4328 | PAPAS FUND | FINANCIAL MANAGEMENT OVER $1,000 |
| | | | | PRESIDENT OR TREASURER OVER $10,000 |

**DELIVER TO:**

- ☒ FRANKLIN PIERCE COLLEGE COLLEGE ROAD, P.O. BOX 60 RINDGE, NH 03461-0060
- ☐ FRANKLIN PIERCE COLLEGE 28 CLIFTON ROAD NASHUA, NH 03063-1213
- ☐ FRANKLIN PIERCE COLLEGE 150 PEMBROKE ROAD CONCORD, NH 03301-5783
- ☐ FRANKLIN PIERCE COLLEGE 73 CORPORATE DRIVE PORTSMOUTH, NH 03801
- ☐ FRANKLIN PIERCE COLLEGE 17 BRADCO STREET KEENE, NH 03431-3070
- ☐ FRANKLIN PIERCE COLLEGE 12 INDUSTRIAL WAY SALEM, NH 03079-2837
- ☐ FRANKLIN PIERCE COLLEGE 24 AIRPORT ROAD, SUITE 300 WEST LEBANON, NH 03784

**METHOD OF ORDERING:**

- ☒ DEPT. FAXED TO VENDOR
- ☐ PURCHASING PLACES ORDER
- ☐ DEPT. PHONED ORDER TO VENDOR
- ☐ CHECK REQUESTED
- ☐ DEPT. MAILED TO VENDOR

**SPECIAL INSTRUCTIONS:**
☐ ATTACHED SHEETS          Agreement attached

| QUANTITY | MODEL/CATALOG | DESCRIPTION | UNIT COST | AMOUNT |
|---|---|---|---|---|
| | | Sports Facilities Engineering Services for design + construction monitoring | | $12,000 |
| | | | | |
| | | on-site construction supervision | | $8,000 |
| | | (may or may not be necessary) at this level | | |

**FOR PURCHASING USE ONLY**

| VENDOR #: | RECEIVED BY: | DATE: | SHIP COST |
|---|---|---|---|
| W-9 SENT: | ☐ PARTIAL   ☐ COMPLETE | | TOTAL  $20,000 |

# PURCHASE ORDER



**FRANKLIN PIERCE COLLEGE**
**COLLEGE ROAD, P.O. BOX 60**
**RINDGE, NEW HAMPSHIRE 03461-0060**

| H  030033 |
| --- |
| THIS ORDER NUMBER MUST APPEAR ON ALL PACKAGES, INVOICES AND SHIPPING PAPERS. |

**VENDOR:** *[handwritten]*

**BILL TO:** FRANKLIN PIERCE COLLEGE
ACCOUNTS PAYABLE DEPT.
COLLEGE ROAD, P.O. BOX 60
RINDGE, NH 03461-0060

| DATE: | REQUESTED BY: | REQUESTOR'S PHONE #: | ACCT. NUMB / LINE ITEM NUMBER | SIGNATURES |
| --- | --- | --- | --- | --- |
| | | | | DEPT. HEAD UP TO $1,000. |
| FISCAL YEAR | | REQUESTOR'S FAX #: | | SENIOR MANAGEMENT OVER $1,000. |
| 04 05 | | | | PRESIDENT OR TREASURER OVER $15,000. |

**DELIVER TO:**

☒ FRANKLIN PIERCE COLLEGE COLLEGE ROAD, P.O. BOX 60 RINDGE, NH 03461-0060
☐ FRANKLIN PIERCE COLLEGE 130 PEMBROKE ROAD CONCORD, NH 03301-3783
☐ FRANKLIN PIERCE COLLEGE 17 BRANCH STREET KEENE, NH 03431-3070

☐ FRANKLIN PIERCE COLLEGE 28 LOFTON ROAD NASHUA, NH 03063-1213
☐ FRANKLIN PIERCE COLLEGE 73 CORPORATE DRIVE PORTSMOUTH, NH 03801
☐ FRANKLIN PIERCE COLLEGE 13 INDUSTRIAL WAY SALEM, NH 03079-2837
☐ FRANKLIN PIERCE COLLEGE 24 AIRPORT ROAD, SUITE 200 WEST LEBANON, NH 03784

**METHOD OF ORDERING:**

☒ DEPT. FAXED TO VENDOR    ☐ DEPT. PHONED ORDER TO VENDOR    ☐ DEPT. MAILED TO VENDOR
☐ PURCHASING PLACES ORDER    ☐ CHECK REQUESTED

**SPECIAL INSTRUCTIONS:**
☐ ATTACHED SHEETS

| QUANTITY | MODEL/CATALOG | DESCRIPTION | UNIT COST | AMOUNT |
| --- | --- | --- | --- | --- |
| | | *[handwritten]* | | |
| | | **Close per Sandra 9/2/04** | | |
| | | *[handwritten]* | | |
| | | JUN 1 7 2004 | | |

**FOR PURCHASING USE ONLY**

| VENDOR #: | RECEIVED BY: | DATE: / / | SHIP COST | |
| --- | --- | --- | --- | --- |
| W-9 SENT: | | ☐ PARTIAL   ☐ COMPLETE | TOTAL | |

WHITE   VENDOR        YELLOW   FINANCIAL SERVICES        PINK   FINANCIAL SERVICES        GREEN   REQUISITIONER

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

05-40121

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Franklin Pierce College

**(b)** County of Residence of First Listed Plaintiff **Cheshire (NH)**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Stanley A. Martin and Jeff D. Bernarducci
Holland & Knight LLP, 10 St. James Ave.,
Boston, MA  02116    (617) 523-2700

## DEFENDANTS
DMA/DiGeronimo-Mikula Associates, LLC and
DiGeronimo Associates, Ltd.

County of Residence of First Listed Defendant **Worcester**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS

#### PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

#### PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

#### PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: **Action for breach of consulting contract and professional negligence**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE
7/25/05

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# 05-40121

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)    **Franklin Pierce College v. DMA/DiGeronimo-Mikula Associates, LLC, et al**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| [ ] | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
| [ ] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases |
| [XX] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
| [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
| [ ] | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

YES [ ]    NO [X]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES [ ]    NO [X]

A.    If yes, in which division do all of the non-governmental parties reside?

Eastern Division [ ]    Central Division [ ]    Western Division [ ]

B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division [ ]    Central Division [X]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    **Jeff D. Bernarducci**

ADDRESS    **Holland & Knight LLP, 10 St. James Ave., Boston, MA  02116**

TELEPHONE NO.    **(617) 523-2700**

(CategoryForm.wpd - 2/15/05)