UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| FRANKLIN PIERCE COLLEGE,<br><br>       Plaintiff<br><br>v.<br><br>DMA/DIGERONIMO-MIKULA ASSOCIATES, LLC , and DIGERONIMO ASSOCIATES, LTD<br><br>Defendants | CIVIL DOCKET # 05-40121-FDS |

**FRANKLIN PIERCE'S MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT**

Plaintiff, Franklin Pierce College ("Franklin Pierce"), pursuant to Fed. R. Civ. P. 15 (a), hereby moves this Court for leave to file its First Amended Complaint. Franklin Pierce seeks to add a count for negligent misrepresentation.

As grounds for its motion, FPP states as follows:

1. The Motion complies with Federal procedural law and therefore should be allowed. Lave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Indeed, "in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . or undue prejudice to the opposing party . . . the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 181 (1962); *Executive Leasing Corp. v. Banco Popular de P.R.*, 48 F.3d 66 (1st Cir. 1995) (citing *Foman*, 371 U.S. at 182).

2. In this case, there is no good reason to deny the Motion. First, the Court's Scheduling Order of January 13, 2006 allows amendments to the pleadings up to and including March 28, 2006. The Motion is within this timeframe and therefore it should be allowed.

# 3619769_v1

3.     Second, the amendment will neither prejudice the Defendants nor unfairly extend case tracking. There is no unfair prejudice to the Defendants because they have not served any written discovery at this time. Even if they had, the new claim for negligent misrepresentation arises from the very same facts and circumstances as the pre-existing counts. As such, justice requires that Franklin Pierce should be entitled to test its theory of negligent misrepresentation on the same set of facts and circumstances asserted in the original complaint. *See Pyramid Co. of Holyoke v. Homeplace Stores Two, Inc.*, 175 F.R.D. 415, 417 (D. Mass. 1997) (allowing motion to amend answer to add wholly new counterclaims including negligent misrepresentation). By the same token, adding this count will not direct the case along an entirely new trajectory that would require any amendment to the tracking order at this time.

WHEREFORE, for the reasons stated above, the Franklin Pierce respectfully request that the Court allow this Motion and grant leave for Franklin Pierce to file its First Amended Complaint in the form annexed hereto as Attachment A.

## REQUEST FOR HEARING

The Plaintiffs request a hearing on this matter if the Court cannot rule in its favor on the briefs alone.

Respectfully submitted,

**FRANKLIN PIERCE COLLEGE**

By its attorneys,

**HOLLAND & KNIGHT LLP**

*/s/ Jeff D. Bernarducci*
Stanley A. Martin, BBO #543957
Jeff D. Bernarducci, BBO #657454
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: March 1, 2006
# 3619769_v1

2

# 3619769_v1

# ATTACHMENT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| FRANKLIN PIERCE COLLEGE,<br><br>    Plaintiff<br><br>v.<br><br>DMA/DIGERONIMO-MIKULA ASSOCIATES, LLC, and DIGERONIMO ASSOCIATES, LTD<br><br>    Defendants | CIVIL DOCKET # 05-40121-FDS |

## FIRST AMENDED COMPLAINT

Plaintiff, Franklin Pierce College, brings this Complaint against Defendant, DiGeronimo Associates, Ltd and DMA/DiGeronimo-Mikula Associates, LLC, for direct and consequential damages caused by the Defendant's breach of their consulting agreement and negligent professional services in connection with the creation and installation of two new synthetic-turf athletic fields at Franklin Pierce College in the summer of 2004.

## PARTIES

1. Plaintiff, Franklin Pierce College ("Franklin Pierce"), is a New Hampshire Corporation with a principal place of business in Rindge, New Hampshire.

2. Defendant, DMA/DiGeronimo-Mikula Associates, LLC ("DMA") and defendant, DiGeronimo Associates, Ltd. ("DA") (collectively, the "Defendants"), are both, upon information and belief, Massachusetts corporations with principal places of business at 5 Apple Lane, Sturbridge, Massachusetts.

**JURISDICTION**

3.  This Court has jurisdiction of this matter pursuant to 28 USC § 1332(a).

4.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**FACTUAL ALLEGATIONS**

**The Project**

5.  Franklin Pierce required the construction of two new athletic fields because the preexisting soccer and baseball fields overlapped, making it impossible to use the fields simultaneously. In addition, the rapid melting of early-fall and late-spring snow regularly left both fields waterlogged and unusable. This limited the outdoor athletic seasons at the college.

6.  Therefore, in 2004 Franklin Pierce endeavored to construct two new synthetic turf athletic fields. These new fields included one baseball field and one multi-purpose soccer field – separate from each other and both laid with synthetic turf (the "Project").

**Agreement for Project Consultation and Construction Management**

7.  In early 2004, Joseph W. DiGeronimo ("DiGeronimo"), on his own reconnaissance and as an agent for Defendants, contacted Franklin Pierce representative Bruce Kirsh ("Kirsh") in order to try and market and sell the Defendants' professional consulting services to Franklin Pierce.

8.  DiGeronimo boasted over several conversations that the Defendants were the leading turf consultants in the Northeast. DiGeronimo represented that he could leverage his relationships with the primary turf vendors and site-work contractors in the industry in order to obtain superior pricing for Franklin Pierce.

2

9. In these same pre-agreement discussions, DiGeronimo further advised Franklin Pierce that the business of turf installation and site-work contracting was a "dirty business" and that the college should have someone like himself and the Defendants assisting them.

10. DiGeronimo also represented that the Defendants could provide specialized engineering consultation for numerous aspects of the pre-construction phase of the Project, as well as construction monitoring throughout all phases of the site-work construction and turf installation.

11. DiGeronimo made these representations in order to induce Franklin Pierce to use the Defendants' services.

12. After these discussions, and on or about February 24, 2004, DiGeronimo submitted to Franklin Pierce a <u>Proposal for Athletic Field Facilities Consultant</u> (the "Proposal"). A true and accurate copy of the Defendants' <u>Proposal for Athletic Field Facilities Consultant</u> is attached hereto as Exhibit A.

13. Under the Proposal, one or both Defendants agreed to render specialized professional consulting services upon which the Defendants intended both Franklin Pierce and its project engineer to rely. For example, the Defendants proposed to leverage their expertise and add value by providing initial site evaluations, assistance to the project engineer in developing technical drawings and specifications, consultation for options regarding various turf products (*i.e.,* types of drainage systems, artificial turfs, etc.), and both preliminary and final budget estimates for the Project. *See* Exhibit A, ¶¶ A, B. The Defendants' Proposal also offered to provide construction monitoring during the life of the Project. *See id.*, ¶ C. Construction monitoring included, but was not limited to, supervising each phase of construction for proper compliance to plans and specifications, assistance with weekly job meetings to maintain project

3

harmony and schedule, submission of weekly construction reports, review and comment on all shop drawings submitted by the site-work contractor, coordination of all Project functions as between Franklin Pierce's Building Committee, Administration, and the site-work contractor, and maintaining a physical presence on the Project at least two times per week throughout the life of the Project in order to appropriately monitor and supervise progress. *See id.*, p. 2-3.

14. DiGeronimo and Franklin Pierce discussed the Proposal and verbally agreed to certain modifications on or about March 3, 2004. Shortly thereafter, these agreed-upon changes were written in the margin by Franklin Pierce and the Proposal was faxed back to the Defendants, along with a copy of a Franklin Pierce purchase order. The Defendants received the fax and thereafter began working under its terms. By these actions the parties entered into an agreement for the Defendants' professional consulting services on the Project (the "Contract"). A true and accurate copy of the Contract is attached hereto as Exhibit B.

15. DiGeronimo knew at all times relevant to the Project that Franklin Pierce had never taken on such a specialized turf project and that Franklin Pierce would rely on the Defendants' site-work and turf-specific engineering advice.

16. DiGeronimo also knew at all times relevant to the Project that Franklin Pierce's project engineer was not a turf specialist and would rely on the Defendants' site work and turf-specific engineering advice.

### DMA's Advice Regarding Project Site-Work

17. H.E. Contracting, Inc. ("HEC or "Project Contractor") was engaged by Franklin Pierce to perform all the site work required for the installation of the new athletic fields. HEC's work included, but was not limited to, demolition of existing conditions (*i.e.,* cutting and removing trees and stumps from the site), clearing and grubbing, erosion control, design of synthetic field subdrains and typical sections, furnishing and installing of storm drainage,

4

providing and installing earthen-base materials (including gravel subbase), loaming and seeding certain areas outside the playing surfaces, providing and installing curbing to enclose playing fields, and all other earthwork and installation of drainage systems that would be required to prepare the site for the installation of the synthetic turf by others.

18. HEC's Contract price for the work was $625,000.

19. HEC requested that Franklin Pierce pay HEC 60% of the price up front (*i.e.,* $375,000) for the purpose of purchasing materials and renting equipment related to the Project.

20. Knowing that Franklin Pierce was depending upon its professional advice, the Defendants advised that such a substantial up-front demand was a standard course of dealing in the turf industry and should be paid. In fact, an up-front payment of 60% of the contract value for a commercial site-work construction project is not a standard course of dealing, but is, instead, highly unusual, which the Defendants knew or should have known.

21. Relying on the Defendants' advice, Franklin Pierce paid HEC $375,000 on or about June 11, 2004, approximately one week after HEC had commenced work.

22. HEC ultimately breached its Contract with Franklin Pierce by performing defective and untimely work and by abandoning the Project on August 25, 2004.

23. HEC never finished $375,000 worth of work.

24. Moreover, and on information and belief, HEC never applied Franklin Pierce's up-front payment of $375,000 to Project costs and expenses. For example, HEC left many subcontractors unpaid and Franklin Pierce has been forced to pay at least $230,881.10 to the same.

25. Throughout the course of the Project, Franklin Pierce and its project engineer raised numerous concerns about the quality and pace of HEC's performance. The Defendants

5

acknowledged the validity of these concerns in certain email correspondence and phone conversations. Despite knowing the poor quality and untimeliness of HEC's work, DiGeronimo advised Franklin Pierce that HEC should not be terminated and that HEC was able to perform the work. On this advice, Franklin Pierce continued to allow HEC to perform – an action that ultimately and proximately caused larger unpaid subcontractor bills and increased the number of defects on the Project.

26. Franklin Pierce expended at least an additional $328,436.75 to correct HEC's defective work.

27. The Defendants owed a certain standard of care to Franklin Pierce with regard to its professional consulting services – particularly when they knew Franklin Pierce was so dependent upon their advice. The Defendants breached this duty of care by negligently recommending that that Franklin Pierce pay HEC 60% of its Contract value up front. This negligent advice proximately caused Franklin Pierce to contract with an illiquid site work contractor that, upon information and belief, needed Franklin Pierce's $375,000 for previous debts, expenses, and other uses unrelated to the Project. Without rendering $375,000 worth of value to Franklin Pierce and leaving unpaid subcontractors in excess of $230,000, the Defendants' advice proximately caused damage to Franklin Pierce by at least $375,000.

### Breach of the Consulting Contract

28. The Defendants failed to provide adequate "Construction Monitoring" as described under the Contract. In particular, and by way of example only, the Defendants failed to "[m]onitor each phase of construction for proper compliance to plans and specifications" and "[c]oordinate all functions with the Committee, Administration and Contractor" when it left Franklin Pierce to deal with HEC just hours prior to HEC's abandonment on August 25, 2004,

and when it failed to respond to Franklin Pierce's daily calls for ten (10) days thereafter – all during a critical time when the Project was falling apart.

29. The Defendants committed other breaches of the Contract prior to HEC's abandonment on August 25, 2004. By way of example only, DiGeronimo knew in July and early August that HEC was performing defective and untimely work, but failed to take the appropriate measures to deal with HEC or advise Franklin Pierce as to what its action should be taken to ensure proper compliance with the plans and specifications. Additionally, the Defendants failed to successfully monitor the site-work phase of construction when it failed to visit the Project at least two (2) times per week and failed to increase its presence at the urging of Franklin Pierce. The Defendants also failed to issue weekly construction reports and had little impact, if any, in "maintain[ing] project harmony and schedule" at weekly construction meetings.

30. The Defendants' failure to provide adequate "Construction Monitoring" caused HEC's defective and untimely work to continue throughout July and August. This resulted in over $900,000 of remedial and "time and material" completion costs in order to finish the Project on time.

31. Franklin Pierce and the Defendants did not sever their relationship under the Contract prior to September 9, 2004.

## Count I
### (Professional Negligence)

32. Franklin Pierce incorporates by reference its allegations contained in paragraphs 1 through 31 as if fully set forth and stated herein.

33. The Defendants owed a duty to render professional consulting services in accordance with the proper standard of care.

7

34. The Defendants negligently breached this duty when they carelessly and negligently advised Franklin Pierce to pay 60% up front to HEC and failed to advise Franklin Pierce that HEC's contract should be terminated or that Franklin Pierce should take other appropriate action to protect its interests vis-à-vis HEC.

35. The Defendants' negligent professional services and advice are the proximate cause of damages sustained by Franklin Pierce: namely, Franklin Pierce had little or none of its $375,000 applied to the Project by HEC, and HEC's negligently-monitored work resulted in physical defects to the Project requiring Franklin Pierce to pay at least an additional $328,436.75 to remediate.

## Count II
### (Breach of Contract)

36. Franklin Pierce incorporates by reference its allegations contained in paragraphs 1 through 35 as if fully set forth and stated herein.

37. Franklin Pierce and the Defendants entered into a Contract by which the Defendants would render certain professional services, including construction monitoring, throughout the entire life of the Project.

38. All obligations of Franklin Pierce that may be conditions precedent to Franklin Pierce's performance under the Contract have been satisfied.

39. The Defendants breached the Contract when they failed to, among other things: (1) adequately monitor and regulate HEC's work to ensure proper compliance with the plans and specifications, (2) submit weekly construction reports, (3) regularly attend the jobsite, and (4) satisfactorily coordinate all functions with Franklin Pierce's Building Committee and Administration.

40. As a direct and proximate result of the Defendants' multiple breaches, Franklin Pierce was damaged by HEC's continued prosecution of unchecked and/or inadequately managed defective work that resulted in hundreds of thousands of dollars of remediation costs by the college.

### Count III
### (Negligent Misrepresentation)

41. Franklin Pierce incorporates by reference its allegations contained in paragraphs 1 through 40 as if fully set forth and stated herein.

42. The Defendants made false statements to Franklin Pierce, including, without limitation, that HEC's requested up-front payment of 60% of the contract was a standard course of dealing in the turf industry and must be paid. The Defendants made these false statements when, in fact, such an up-front payment for commercial site-work is not a standard course of dealing, but is, instead, highly unusual, which the Defendants knew or should have known.

43. The Defendant's also made false statements when, despite knowing the poor quality and untimeliness of HEC's work, advised Franklin Pierce that HEC should not be terminated and that HEC was able to perform the work.

44. The Defendant's made these and other false statements as part of professional services it rendered to Franklin Pierce for a fee.

45. The Defendants failed to exercise reasonable competence in obtaining and communicating its findings, particularly when, without limitation, it was in no position to make any recommendation due to its continued failure to be appropriately involved with the Project.

46. The Defendants knew, or should have known, that Franklin Pierce would rely upon its statements based upon the relationship between the parties and the purpose for Defendants' presence on the Project.

47. Franklin Pierce justifiably relied on the Defendants' false statements because the Defendants' professional and specialized consultation and monitoring responsibilities was the very purpose of its involvement with the Project.

48. Franklin Pierce's reliance on the Defendant's false statements proximately caused the pecuniary loss that Franklin Pierce now suffers, as on information and belief, HEC never applied Franklin Pierce's up-front payment of $375,000 to Project costs and expenses. In addition, it is Defendants' false statements that caused Franklin Pierce to continue to allow HEC to perform – an action that ultimately and proximately caused larger unpaid subcontractor bills and an increased the number of defects, remedial work, and heightened cost to complete the Project.

49. Franklin Pierce's damages due to the Defendants' negligent misrepresentations amounts to no less than $900,000.

WHEREFORE, Plaintiff, Franklin Pierce College, prays that this Court

    a. Enter judgment in favor of Franklin Pierce on Count I (Professional Negligence) and Count III (Negligent Misrepresentation), thereby awarding Franklin Pierce its damages, both punitive and compensatory, including all interest and costs; and

    b. Enter judgment in favor of Franklin Pierce on Count II (Breach of Contract), thereby awarding Franklin Pierce its damages, including all interest and costs; and

    c. Enter judgment in favor of Franklin Pierce for such other and further relief as this Court deems just.

## JURY DEMAND

Franklin Pierce hereby demands a jury trial on all counts.

        Respectfully submitted,

        **FRANKLIN PIERCE COLLEGE**

        By its attorneys,

        **HOLLAND & KNIGHT LLP**

        _____
        Stanley A. Martin, BBO #543957
        Jeff D. Bernarducci, BBO #657454
        10 St. James Avenue
        Boston, MA  02116
        (617) 523-2700

Dated:  March 1, 2006

# 3619582_v1
100372.00003