UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

C.A. NO. 05-40121FDS

```
_____
FRANKLIN PIERCE COLLEGE               )
     Plaintiff                        )
V.                                    )
DMA/DIGERONIMO-MIKULA ASSOCIATES, LLC )
AND DIGERONIMO ASSOCIATES, LTD        )
     Defendants/Third-Party Plaintiffs)
                                      )
V.                                    )
H. E. CONTRACTING, INC.               )
     Third-Party Defendant            )
_____)
```

**HEARING MEMORANDUM IN SUPPORT OF THIRD-PARTY PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT AGAINST H.E. CONTRACTING, INC.**

Third-Party Plaintiffs DMA/Digeronimo-Milkula Associates, LLC
and Digeronimo Associates, LTD. (hereinafter "Digeronimo")
further supports its Motion For Relief From Standing Order
Regarding Motions for Default Judgment, and in response to the
court's notice of hearing dated May 3, 2006, herein addresses
enumerated issues presented by the court:

(1)  Whether service of process on H.E. Contracting was
     sufficient and is proved by record evidence

A. Undersigned counsel made efforts to contact attorney Thomas
   J. Pappas who represented H. E. Contracting, Inc. ("HEC")
   in the U.S. District Court, District of New Hampshire (#:
   1:04-cv-00484-JM), prior to the advancement of the case for

1

acceptance of service. (See letter dated November 2, 2005
attached hereto as Exhibit 1 and response letter dated
November 3, 2005 from Attorney Pappas, attached hereto as
Exhibit 2); and

B. The Third-Party Complaint was served upon H.E. Contracting
on November 9, 2005 as evidenced by the original Third-
Party Summons with return of service which was filed with
this court on November 18, 2005.  HEC had written notice
and actual service of process.

(2)    Whether Federal jurisdiction has been established
HEC's business address is 1 Hidden Creek Drive,
Scarborough, Maine 04074-8451 and the claimed amount
against HEC for which contribution is sought could exceed
the Franklin Pierce College claim of up to hundreds of
thousands of dollars.

(3)    Whether, assuming that jurisdiction has been established,
defendants have stated a claim for contribution by H.E.
Contractors for any judgment Franklin Pierce College may
obtain against defendants

A. Pursuant to F.R.C.P. 14, HEC is or may be liable to Third-
Party Plaintiffs DiGeromino for all or part of the
Plaintiff/Franklin Pierce's claims against Third-Party
Plaintiffs DiGeronimo.

B. The College contends that on account of HEC's deficiencies the project is replete with defects and deficiencies for which the College has had to correct and repair.

C. HEC brought a complaint against the College in the U.S. District Court, District of New Hampshire (#:1:04-cv-00484-JM) (See Complaint attached hereto as <u>Exhibit 3</u>) to which the College brought counterclaims against HEC. (See Answer, Counterclaim, and Third-Party Complaint of Franklin Pierce College attached hereto as <u>Exhibit 4</u>).

D. The College claimed it was damaged by HEC for completion costs and costs to repair defective work that were estimated at over $800,000.00. (See Answer, Counterclaim, and Third-Party Complaint of Franklin Pierce College attached hereto as <u>Exhibit 4</u> at Counterclaim ¶115.)

E. The damages for which Franklin Pierce is seeking recovery against DiGeronimo in the present action resulted from the actions of HEC.  If DiGeronimo is held liable to Franklin Pierce for such damage, Digeronimo is entitled to contribution from HEC in the same amount as may be awarded against DiGeronimo.

(4)  <u>Whether Franklin Pierce College has obtained a judgment or settled a claim against H.E. Contractors in its state court action, and, if so, the effect of that judgment or</u>

<u>settlement on any right of defendants for contribution</u>

<u>with respect to the present action</u>

The U.S. District Court, District of New Hampshire

(#:1:04-cv-00484-JM) case was settled under terms and

conditions wherein HEC gave up and compromised a claim of

value it had against Franklin Pierce College in exchange

for Franklin Pierce giving up its claims it may have had

against HEC for defective work or for damages.  That

settlement effects the rights of DiGeronimo, since it can

be established the party liable for any of the college's

damages was HEC <u>not</u> Digeronimo.

Wherefore, Defendants/Third-Party Plaintiffs

DMA/DiGeronimo-Mikula Associates, LLC and DiGeronimo Associates,

LTD, respectfully request that this Court enter default judgment

against the Third-Party Defendant H.E. Contracting, Inc. and

Order, HEC to contribute to DiGeronimo all monies DiGeronimo may

be ordered to pay Franklin Pierce, in the event judgment is

entered in favor of Franklin Pierce on its claim against

DiGeronimo.

Dated: June 7, 2006                    /s/Karl J. Gross
                                       Karl J. Gross, Esquire
                                       -BBO #553465
                                       O'Reilly, Grosso & Gross, P.C.
                                       1671 Worcester Road, Suite 205
                                       Framingham, MA 01701-5400
                                       Tel: 508-620-0055
                                       Fax: 508-620-7655

## <u>LIST OF ATTACHED EXHIBITS</u>

<u>Exhibit 1:</u>     Letter dated November 2, 2005 from Attorney Gross
            to Attorney Pappas

<u>Exhibit 2:</u>     Response Letter dated November 3, 2005 from
            Attorney Pappas to Attorney Gross

<u>Exhibit 3:</u>     Complaint brought in U.S.D.C., District of New
            Hampshire, Case# 1:04-cv-00484-JM

<u>Exhibit 4:</u>     Answer, Counterclaim, and Third-Party Complaint
            of Franklin Pierce College brought in U.S.D.C.,
            District of New Hampshire, Case# 1:04-cv-00484-JM

Dated: June 7, 2006                    /s/Karl J. Gross
                                       Karl J. Gross, Esquire
                                       -BBO #553465
                                       O'Reilly, Grosso & Gross, P.C.
                                       1671 Worcester Road, Suite 205
                                       Framingham, MA 01701-5400
                                       Tel: 508-620-0055
                                       Fax: 508-620-7655

## **Certificate of Service**

I hereby certify that this Hearing Memorandum In Support Of Third-Party Plaintiff's Motion For Default Judgment Against H.E. Contracting, Inc. with attached List of Exhibits, Exhibits 1-4 and attached certificate of service were electronically forwarded to all counsel of record on this date. Electronically filed through ECF to:

Attorneys For Plaintiff: Stanley A. Martin and Jeff D. Bernarducci, Holland & Knight LLP, 10 St. James Avenue, Boston 02116

Conventionally served:
Will be conventionally served on Third Party Defendant H.E. Contracting, Inc. at 1 Hidden Creek Drive, Scarborough, Maine 04074-8451


Dated: June 7, 2006         /s/Karl J. Gross
                            Karl J. Gross, Esquire
                            -BBO #553465
                            O'Reilly, Grosso & Gross, P.C.
                            1671 Worcester Road, Suite 205
                            Framingham, MA 01701-5400
                            Tel: 508-620-0055
                            Fax: 508-620-7655

November 2, 2005

Via FEDEX Overnight Mail
Thomas J. Pappas, Esquire
Wiggin & Nourie PA
670 N Commercial St, Ste 305
Manchester, NH 03101

        RE:  FRANKLIN PIERCE COLLEGE
              V.
              DMA/DIGERONIMO-MIKULA ASSOCIATES, LLC
              AND DIGERONIMO ASSOCIATES, LTD.
              V.
              H.E. CONTRACTING, INC.
              U.S.D.C. docket No. 05-40121FDS

Dear Attorney Pappas:

    As you may know, I represent DMA/Digeronimo-Mikula
Associates, LLC And Digeronimo Associates, Ltd.

    In that regard, enclosed please find a Notice of Lawsuit
and Request For Waiver of Service of Summons and the Waiver of
Service of Summons, along with a copy of the Summons, the
original complaint filed by Franklin Pierce College, the Answer
and Third Party Complaint of the Defendants DMA/Digeronimo-
Mikula Associates, LLC And Digeronimo Associates, Ltd., and
Local Rule 7.3 Corporate Disclosure Statement.  I trust in
accordance with Federal Rules you will accept service on behalf
of H.E. Contacting, Inc.  Kindly acknowledge your acceptance of
service by executing the enclosed Waiver of Service of Summons
Form and returning it to me in the enclosed self addressed
stamped envelope, while retaining one copy for your files.

Via FEDEX Overnight Mail
Thomas J. Pappas, Esquire
Wiggin & Nourie PA
November 2, 2005
Page 2 of 2


    Kindly advise me of your intentions by Thursday, November 10, 2005 and if you will not accept service on behalf of H.E. Contracting, Inc. otherwise I will proceed to serve them directly, at a cost chargeable to H.E. Contracting, Inc.

    Thank you.

            Very truly yours,



            Karl J. Gross

KJG/ar
Enclosures
s.a.s.e.
FEDEX # 8530 5185 8986

# WIGGIN &NOURIE, PA.

Counsellors at Law

Thomas J. Pappas
tpappas@Wiggin-Nourie.com
603-629-4598

November 3, 2005

Carl J. Gross, Esquire
O'Reilly, Grosso & Gross, PC
1671 Worcester Road, Suite 205
Framingham, MA 01701-5400

Re:     **Franklin Pierce College v. DMA/DiGeronimo-Mikula Associates, LLC and
        DiGeronimo Associates, Ltd.
        and DiGeronirno Associates, Ltd.** v. **H.E. Contracting, Inc.
        U.S.D.C. Docket No. 05-40121FDS**

Dear Mr. Gross:

This letter will respond to your November 2, 2005 letter to me regarding the above referenced matter. I will not accept service on behalf of H.E. Contracting, Inc. I am not admitted to practice law in the Commonwealth of Massachusetts, and would not be representing H.E. Contracting, Inc. in any litigation pending in Massachusetts.

Sincerely,

Thomas J. Pappas

TJP/sddAO0673216.DOC

cc: H.E. Contracting, Inc. (with enclosures)

67o NORTH COMMERCIAL STREET, SUITE 305, P.O. Box 8o8, MANCHESTER, NEW HAMPSHIRE 03105-0808 T 603-669-2211 F 603-623-8442

'i

WWW.WIGGIN-NOURIE.COM                                                                    ITO MERITAS LAW FIRMS WORLDWIDE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| _____ | |
| H.E. Contracting, ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | CIVIL DOCKET #_____ |
| ) | |
| Franklin Pierce College, ) | |
|     *Defendant*. ) | |
| _____) | |

## **COMPLAINT**

H.E. Contracting ("HEC"), by and through its attorneys, Nelson, Kinder, Mosseau & Saturley, P.C., files this complaint against Defendant Franklin Pierce College ("the College"), and in support thereof states as follows:

### **PARTIES**

1.    The Plaintiff, H.E. Contracting, is a Maine entity with its principal place of business in Scarborough, Maine.

2.    The Defendant, Franklin Pierce College, is a New Hampshire corporation with its principal place of business in Rindge, New Hampshire.

### **JURISDICTION**

3.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a).

4.    The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## FACTUAL BACKGROUND

## NEGOTIATION AND EXECUTION OF THE CONTRACT

5.      In April 2004, the president of HEC, Eric Lenardson, was contacted by representatives of the College and invited to bid on work related to the construction of athletic fields and associated facilities at the College ("the project").

6.      Mr. Lenardson visited the site, spoke with representatives of the College, reviewed drawings, and submitted a bid under the name of Statewide Environmental Services, a Rhode Island entity owned by Mr. Lenardson.

7.      The initial bid totalled $3.7 million to $4.16 million depending upon various options selected by the College.

8.      After Mr. Lenardson submitted the bid, the College informed Mr. Lenardson that his bid was too high.

9.      Shortly afterwards, Mr. Lenardson was contacted by the College and, over the course of several discussions, was asked to rebid the job with successively reduced scopes of work and with several cost items removed.

10.     Specifically, Mr. Lenardson was asked to assume, among other things, that gravel and other material was readily accessible to him on site, and would not have to be purchased.

11.     In addition, Mr. Lenardson was informed that all construction outside the limits of the baseball and soccer field playing surfaces, and the area between the fields, as well as the purchase and installation of the artificial turf playing surface, would be covered by other contracts.  In short, and without limitation, Mr. Lenardson would not be expected to construct dugouts, bleachers, parking areas or perform other site drainage,

2

excavation or earthworks outside the limits of the field playing surfaces. The College represented that HEC's sole scope of work would be preparing the drainage and subsurface materials necessary for installation of the artificial turf playing surface.

12.     On this revised understanding of the scope of work, HEC bid $625,000 and was awarded the contract in May 2004.

13.     On June 2, 2004, HEC commenced work at the project site.

14.     On June 9, 2004, the parties entered into a contract covering HEC's work on the project. Pursuant to the Contract and agreements between the parties, HEC's scope of work included design of field subdrains, demolition, erosion control, clearing and grubbing, earthwork, storm drainage, field base materials, pavement and gravel subbase, loam and seed, and curbing primarily within the limits of each athletic field. Certain items of work, including site lighting, the construction of dugouts, bleachers, fencing, and press boxes were specifically excluded from HEC's scope of work.

## CONTRACT PAYMENTS

15.     The College paid HEC $375,000, 60% of the contract price, in early June 2004. This left an outstanding contract balance of $250,000.

16.     HEC submitted a payment requisition in July 2004 in the amount of $187,500.

17.     The contract required that the College pay those requisitions within thirty (30) days of receipt.

18.     The College has not, to date, paid HEC amounts due and owing under the payment requisition.

3

19.     In August 2004, the College informed HEC that they intended to withhold payment of the payment requisition until outstanding change orders were resolved.

20.     Later in August 2004, the College demanded that HEC deliver lien waivers executed by vendors whose material had just been delivered to the site, and to whom payment was not then due.

21.     On August 19, 2004, the College paid invoices of W.E. Graves, one of HEC's vendors, $77,069.58, and deducted that amount from HEC's outstanding contract balance.

22.     The College's refusal to pay HEC's payment requisition when due severely constrained HEC's cash flow and forced HEC to walk off the job on August 28, 2004.

23.     HEC has been sued by one of its vendors for payments relating to the rental of equipment utilized on the project.  HEC cannot pay any amounts that may be owing to this and other vendors without receiving payment from the College.

## CHANGE ORDERS

24.     At the time HEC commenced work on the project, the College had not received environmental permits necessary before HEC could commence work on the soccer field.  As a result, HEC could only work on a portion of the project.

25.     The College did not receive the Wetlands and Non-Site Specific Permit from the New Hampshire Department of Environmental Services until June 16, 2004, fourteen days after HEC commenced work on the project.

26.     The College did not receive a permit from the Army Corps of Engineers until June 21, 2004, nineteen days after HEC commenced work on the project.

4

27.     HEC performed work on the baseball field and other tasks while the permits were pending, but was forced to idle its crews and equipment for fifteen days because the College had not received the permits, and no other work was available at the project to be performed.

28.     As the project progressed, the College authorized and directed HEC to perform additional work outside the scope of the contract.

29.     On July 26, 2004, HEC submitted change order number 1 for costs of $37,000 and a fifteen day schedule extension based upon the delay in issuance of the environmental permits.

30.     On July 26, 2004, HEC submitted change order number 2 for increased costs of $163,986, and a three day schedule extension based upon extra work authorized or directed by the College, including clearing of trees beyond the field limit; grubbing of stumps; installation of additional sit fence; installation of boundary fence; laser grading; redistributing material for cut and fill of an area outside the boundaries of the HEC's work; compaction of subgrade material; reshaping of grades; adding 38,000 square feet around the soccer field; adding 30,000 square feet around the baseball field; moving an additional 8,900 cubic feet of material too add area around the playing fields; accommodating electrical, fencing, sewer, water and additional walkway to the upper field; and building pads for the press box and bleachers.

31.     On July 28, 2004, HEC submitted change order number 7 for increased costs of $107,873.50 incurred for additional manhours to meet the College's schedule demands.

32.     On July 28, 2004, HEC submitted change order number 8 for increased costs of $85,500, plus three additional schedule days, to supply and install an additional 10 feet around the soccer field limits of 225' x 360', including base material, drainage material, equipment, manpower, and laser grading.

33.     On July 29, 2004, HEC submitted change order number 9 for additional costs of $15,000 for project management services provided by HEC, including scheduling of subcontractors, schedule documentation, and organization of weekly construction meetings.

34.     HEC's outstanding change orders amount to $409,359.50, plus 10 days added to the schedule.

35.     The College refused to grant schedule extensions based upon any of the outstanding change orders requested and directed by the College.

36.     The College directed HEC to finish the work by the original schedule date notwithstanding the extra work authorized and directed by the College in the outstanding change orders.  As a result of this demand, HEC incurred additional costs for personnel and equipment in accelerating its performance.

37.     The College's conduct has jeopardized HEC's ability to pay its suppliers and vendors.

38.     On information and belief, representatives of the College have "bad-mouthed" HEC to potential customers and have impaired HEC's ability to secure work. By way of example only, and not by way of limitation, representatives of the College have communicated with representatives of the Seacoast United Soccer Club, which is building a soccer field complex in Brentwood, New Hampshire, that HEC's work is of

poor quality.  HEC was bidding for the contract to construct the Seacoast United Fields in Brentwood, New Hampshire at the time.

## COUNT I
### (Breach of Contract)

39.    HEC realleges and reaffirms Paragraphs 1-38 inclusive as if each and every allegation is fully set forth herein.

40.    The College entered into a contract wherein it agreed to pay HEC $625,000 for certain work related to the construction of athletic fields.

41.    The College entered into a contract where it agreed to pay progress payment requisitions within thirty (30) days after they were received.

42.    The College materially breached its obligations under the contract by failing and refusing to make progress payments when due.

43.    As a result of the College's material breach of contract, HEC was forced to leave the job on August 28, 2004.

44.    HEC fulfilled all of its contractual obligations up to and through the time that it left the job on August 28, 2004.

45.    HEC has incurred direct, indirect, and consequential damages as a result of the College's breach.

## COUNT II
### (Breach of Contract – Change Orders)

46.    HEC realleges and reaffirms Paragraphs 1-45 inclusive as if each and every allegation is fully set forth herein.

47.    The College directed and authorized that HEC perform certain work outside the scope of the contract between the parties.

48.     HEC agreed to perform and performed the extra work directed and authorized by the College.

49.     HEC submitted change orders relating to each item of extra work.

50.     The College failed and refused to pay HEC for the extra work.

51.     HEC has incurred direct, indirect, and consequential damages as a result of the College's breach.

## COUNT III
### (Breach of Contract – Cardinal Change)

52.     HEC realleges and reaffirms Paragraphs 1-51 inclusive as if each and every allegation is fully set forth herein.

53.     The College directed and authorized that HEC perform certain work outside the scope of the contract between the parties.

54.     HEC agreed to perform and performed the extra work directed and authorized by the College.

55.     The extra work authorized and directed by the College so drastically altered the contractual scope of work that HEC performed duties fundamentally or materially different than those bargained for.

56.     HEC submitted change orders relating to its work on the project.

57.     The College failed and refused to pay HEC for all of its work on the project.

58.     HEC has incurred direct, indirect, and consequential damages as a result of the College's breach.

## COUNT IV
### (Quantum Meruit)

59.    HEC realleges and reaffirms Paragraphs 1-58 inclusive as if each and every allegation is fully set forth herein.

60.    HEC performed approximately $1,058,459.50 of work related to the construction of athletic fields and related facilities for the College.

61.    HEC has conferred a measurable benefit upon the College by performing this work.

62.    Through the project, the College was aware that it was receiving a benefit by virtue of HEC's work.

63.    The College has made payments to or on behalf of HEC totaling approximately $476,169.58.

64.    The College accepted and retained the benefits of $582,289.92 of work performed by HEC under such circumstances as to make it inequitable for the College to retain the benefits without payment for their value.

## COUNT V
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

65.    HEC realleges and reaffirms Paragraphs 1-64 inclusive as if each and every allegation is fully set forth herein.

66.    Implied in every contract under New Hampshire law is an obligation that the parties act in good faith and deal fairly with one another in the performance of their contractual obligations.

67.    The College acted unreasonably, arbitrarily, capriciously, and in a manner inconsistent with HEC's reasonable expectations, and in breach of the contract, by failing

and refusing to pay HEC's invoices when due, and failing and refusing to pay HEC's change orders.

68.     As a direct and proximate result of the College's breach of its implied obligations of good faith and fair dealing, HEC suffered direct, indirect, and consequential damages.

## COUNT VI
### (Tortious Interference with Prospective Contractual Relations)

69.     HEC realleges and reaffirms Paragraphs 1-68 inclusive as if each and every allegation is fully set forth herein.

70.     On information and belief, the College has communicated to other prospective customers of HEC that HEC did poor quality work on the College's athletic field project.

71.     The College's communications regarding the quality of HEC's work were false.

72.     On information and belief, the College's communications as alleged have caused HEC's prospective clients not to enter into business relations with HEC.

73.     On information and belief, the College's communications as alleged have prevented HEC from acquiring prospective contractual relations.

74.     As a direct and proximate result of the College's improper and wrongful interference with HEC's prospective contractual relations, HEC has suffered direct, indirect, and consequential damages.

## COUNT VII
### (Violation of New Hampshire Consumer Protection Act – N.H. RSA ch. 358-A)

75.    HEC realleges and reaffirms Paragraphs 1-74 inclusive as if each and every allegation is fully set forth herein.

76.    The College engaged in an unfair act or practice when it withheld amounts due and owing to HEC under the contract.

77.    The College engaged in an unfair act or practice when it withheld amount due and owing to HEC under the contract until the outstanding change orders were resolved.

78.    The College's unfair acts or practices were willful and knowing.

79.    As a direct and proximate result of the College's unfair acts or practices, HEC has suffered direct, indirect, and consequential damages.

WHEREFORE, HEC respectfully requests that this Honorable Court:

A)    Enter judgment in favor of HEC;

B)    Order Franklin Pierce College to pay HEC the sum in the amount of $582,289.92, plus interest and costs;

C)    Order Franklin Pierce College to pay HEC double or treble damages for its willful or knowing violation of N.H. RSA ch. 358-A;

D)    Order Franklin Pierce College to pay HEC the costs of suit and reasonable attorneys' fees; and

E)    Grant such other and further relief as may be just and proper.

Respectfully submitted,
H.E. Contracting,
By Its Attorneys,
Nelson, Kinder, Mosseau & Saturley, P.C.


December 21, 2004                    */s/ Christopher D. Hawkins*
                                     Christopher D. Hawkins, Esq. (#10005)
                                     99 Middle St.
                                     Manchester, NH 03101
                                     (603)647-1800
                                     (603)647-1900 (fax)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

H.E. CONTRACTING,
                    Plaintiff

v.

FRANKLIN PIERCE COLLEGE,            CIVIL DOCKET # 1:04-CV-00484-PB
                    Defendant
                    Third-Party Plaintiff
V.

ERIC LENARDSON
                    Third-Party Defendant

## ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT
## OF FRANKLIN PIERCE COLLEGE

Franklin Pierce College ("Franklin Pierce") hereby answers the Complaint of H.E.

Contracting ("HEC") as follows:

1.      Franklin Pierce is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 1 of the Complaint.

2.      Franklin Pierce admits the allegations contained in paragraph 2 of the Complaint.

3.      The allegations contained in paragraph 3 of the Complaint purport to state

conclusions of law to which no response is required.  To the extent that an answer is required,

paragraph 3 is denied.

4.      The allegations contained in paragraph 4 of the Complaint purport to state

conclusions of law to which no response is required.  To the extent that an answer is required,

paragraph 4 is denied.

# 2575050_v3

5.      Franklin Pierce is without knowledge or information sufficient to form a belief as to the truth of the allegation that Eric Lenardson is the President of HEC and therefore denies the entire allegation of paragraph 5 of the Complaint.

6.      Franklin Pierce is without knowledge or information sufficient to form a belief as to the truth of the allegation that Statewide Environmental Services is either a Rhode Island entity or owned by Eric Lenardson and therefore denies the entire allegation of paragraph 6 of the Complaint.

7.      Franklin Pierce denies the allegations contained in paragraph 7 of the Complaint.

8.      Franklin Pierce admits the allegations contained in paragraph 8 of the Complaint.

9.      Franklin Pierce denies the allegations contained in paragraph 9 of the Complaint.

10.     Franklin Pierce denies the allegations contained in paragraph 10 of the Complaint.

11.     Franklin Pierce denies the allegations contained in paragraph 11 of the Complaint.

12.     Franklin Pierce denies the allegations contained in paragraph 12 of the Complaint.

13.     Franklin Pierce admits the allegations contained in paragraph 13 of the Complaint.

14.     Franklin Pierce denies the allegations contained in paragraph 14 of the Complaint. Answering further, Franklin Pierce admits only that it entered into a contract with HEC and/or Mr. Lenardson on June 9, 2004 and that the contract speaks for itself.

15.     Franklin Pierce admits the allegations contained in paragraph 15 of the Complaint.

16.     Franklin Pierce denies the allegations contained in paragraph 16 of the Complaint. By way of further answer, Franklin Pierce states and admits that HEC submitted a requisition

dated June 21, 2004 in the amount of $187,500, but denies that any amount of such requisition was due under the contract.

17.     Franklin Pierce denies the allegations contained in paragraph 17 of the Complaint.

18.     Franklin Pierce denies the allegations contained in paragraph 18 of the Complaint.

19.     Franklin Pierce denies the allegations contained in paragraph 19 of the Complaint.

20.     Franklin Pierce denies the allegations contained in paragraph 20 of the Complaint.

21.     Franklin Pierce admits the allegations contained in paragraph 21 of the Complaint.

22.     Franklin Pierce is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.     Franklin Pierce is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.     Franklin Pierce denies the allegations contained in paragraph 24 of the Complaint.

25.     Franklin Pierce denies the allegations contained in paragraph 25 of the Complaint.

26.     Franklin Pierce admits the allegations contained in paragraph 26 of the Complaint.

27.     Franklin Pierce admits that HEC performed a limited amount of work in early June 2004, but denies the remaining allegations contained in paragraph 27 of the Complaint.

28.     Franklin  Pierce admits only that it authorized, directed and approved the work associated with change orders numbered 4, 5 and 6, and otherwise denies the allegations contained in paragraph 28 of the Complaint.

29.     Franklin Pierce denies the allegations contained in paragraph 29 of the Complaint.

30.     Franklin Pierce denies the allegations contained in paragraph 30 of the Complaint. Answering further, Franklin Pierce admits only that change order number 2 was submitted.

31.     Franklin Pierce admits only that change order number 7 was submitted, and otherwise denies the allegations contained in paragraph 31 of the Complaint.

32.     Franklin Pierce admits the allegations contained in paragraph 32 of the Complaint.

33.     Franklin Pierce admits only that change order number 9 was submitted, and otherwise denies the allegations contained in paragraph 33 of the Complaint.  .

34.     Franklin Pierce denies the allegations contained in paragraph 34 of the Complaint.

35.     Franklin Pierce denies the allegations contained in paragraph 35 of the Complaint.

36.     Franklin Pierce admits that it directed HEC to complete its work by the original schedule date, and otherwise denies the allegations contained in paragraph 36 of the Complaint.

37.     Franklin Pierce denies the allegations contained in paragraph 37 of the Complaint.

38.     Franklin Pierce denies the allegations contained in paragraph 38 of the Complaint.

39.     Franklin Pierce incorporates by reference answers 1 through 38 above as if fully set forth herein.

40.     Franklin Pierce denies the allegations contained in paragraph 40 of the Complaint. Franklin Pierce admits only that it entered into a contract with HEC and/or Mr. Lenardson on June 9, 2004 and that the contract speaks for itself.

41.     Franklin Pierce denies the allegations contained in paragraph 41 of the Complaint.

42.     Franklin Pierce denies the allegations contained in paragraph 42 of the Complaint.

43.     Franklin Pierce denies the allegations contained in paragraph 43 of the Complaint.

44.     Franklin Pierce denies the allegations contained in paragraph 44 of the Complaint.

45.     Franklin Pierce denies the allegations contained in paragraph 45 of the Complaint.

46.     Franklin Pierce incorporates by reference answers 1 through 45 above as if fully set forth herein.

47.     Franklin Pierce denies the allegations contained in paragraph 47 of the Complaint.

48.     Franklin Pierce denies the allegations contained in paragraph 48 of the Complaint.

49.     Franklin Pierce denies the allegations contained in paragraph 49 of the Complaint.

50.     Franklin Pierce denies the allegations contained in paragraph 50 of the Complaint.

51.     Franklin Pierce denies the allegations contained in paragraph 51 of the Complaint.

52.     Franklin Pierce incorporates by reference answers 1 through 51 above as if fully set forth herein.

53.     Franklin Pierce denies the allegations contained in paragraph 53 of the Complaint.

54.     Franklin Pierce denies the allegations contained in paragraph 54 of the Complaint.

55.     Franklin Pierce denies the allegations contained in paragraph 55 of the Complaint.

56.     Franklin Pierce admits the allegations contained in paragraph 56 of the Complaint.

57.     Franklin Pierce denies the allegations contained in paragraph 57 of the Complaint.

58.     Franklin Pierce denies the allegations contained in paragraph 58 of the Complaint.

59.     Franklin Pierce incorporates by reference answers 1 through 58 above as if fully set forth herein.

60.     Franklin Pierce denies the allegations contained in paragraph 60 of the Complaint.

61.     Franklin Pierce denies the allegations contained in paragraph 61 of the Complaint.

62.     The allegations contained in paragraph 62 of the Complaint purport to state conclusions of law to which no response is required.  To the extent that an answer is required, paragraph 62 is denied.

63.     Franklin Pierce denies the allegations contained in paragraph 63 of the Complaint.

64.     The allegations contained in paragraph 64 of the Complaint purport to state conclusions of law to which no response is required.  To the extent that an answer is required, paragraph 64 is denied.

65.     Franklin Pierce incorporates by reference answers 1 through 64 above as if fully set forth herein.

66.     The allegations contained in paragraph 66 of the Complaint purport to state conclusions of law to which no response is required.  To the extent that an answer is required, paragraph 66 is denied.

67.     Franklin Pierce denies the allegations contained in paragraph 67 of the Complaint.

68.     Franklin Pierce denies the allegations contained in paragraph 68 of the Complaint.

69.     Franklin Pierce incorporates by reference answers 1 through 68 above as if fully set forth herein.

70.     Franklin Pierce denies the allegations contained in paragraph 70 of the Complaint.

71.     Franklin Pierce denies the allegations contained in paragraph 71 of the Complaint.

72.     Franklin Pierce is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 of the Complaint and therefore denies the same.

73.     Franklin Pierce is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 of the Complaint and therefore denies the same.

74.     Franklin Pierce denies the allegations contained in paragraph 74 of the Complaint.

75.     Franklin Pierce incorporates by reference answers 1 through 74 above as if fully set forth herein.

76.     Franklin Pierce denies the allegations contained in paragraph 76 of the Complaint.

77.     Franklin Pierce denies the allegations contained in paragraph 77 of the Complaint.

78.     Franklin Pierce denies the allegations contained in paragraph 78 of the Complaint.

79.     Franklin Pierce denies the allegations contained in paragraph 79 of the Complaint.

## FIRST  DEFENSE

Plaintiff fails to state any claim upon which relief can be granted.

## SECOND  DEFENSE

Plaintiff is precluded from recovery based on misnomer of a party.

## THIRD  DEFENSE

Plaintiff is precluded from recovery on any claim or claims, in whole or in  part, related to work or services that Franklin Pierce has already paid the Plaintiff or for any work-related costs paid on Plaintiff's behalf.

## FOURTH  DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to Waiver.

## FIFTH  DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to the Doctrine of Unclean Hands.

## SIXTH  DEFENSE

Plaintiff's actions have estopped it from recovery on any of its claims.

## SEVENTH  DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to its breach of Good Faith and Fair Dealing

## EIGHTH  DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to Anticipatory Repudiation.

## NINTH  DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to its failure to join necessary parties pursuant to New Hampshire statutory and common law.

## TENTH  DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to the fact that it breached any obligation between it and Franklin Pierce.

## ELEVENTH  DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to Accord and Satisfaction.

## TWELFTH DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to failure of consideration.

## THIRTEENTH DEFENSE

Plaintiff is precluded from recovery on any claim or claims due to Release.


**WHEREFORE**, Franklin Pierce College demands that this Court dismiss the complaint of H.E. Contracting, Inc., with prejudice, and furthermore award Franklin Pierce its costs, interest, attorneys' fees and such other relief as this Court may deem appropriate.

**DEMAND FOR JURY TRIAL:** Plaintiff demands trial by jury of the issues raised in the above Complaint.


## COUNTERCLAIM OF FRANKLIN PIERCE COLLEGE

For a cause of action and by way of counterclaim, the Defendant/Plaintiff-in-Counterclaim, Franklin Pierce College ("Franklin Pierce"), hereby asserts the following Counterclaim against the Plaintiff/Defendant-in-Counterclaim, H.E. Contracting, Inc. ("HEC"):

### PARTIES

80.     Franklin Pierce is a New Hampshire Corporation with a principal place of business in Rindge, New Hampshire.

81.     HEC is, upon information and belief, a Maine entity with its principal place of business in Scarborough, Maine.

### JURISDICTION

82.     This Court has jurisdiction of this matter pursuant to 28 USC § 1332(a).

83.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## FACTUAL ALLEGATIONS

84.     Franklin Pierce entered into a contract with HEC and Eric Lenardson ("Lenardson") dated June 9, 2004 (the "Contract") to perform certain site work in connection with the installation of two new, synthetic-turf athletic fields at the College (the "Project").

85.     The Contract required HEC to Complete its work by September 1, 2004.

86.     The Contract price was $625,000.

87.     Contract *Section 01010 – Summary of Work* together with the project drawings represented the scope of work.

88.     Contract *Section 01010 – Summary of Work*, the Grading Plan, and the Site Plan were part of the materials made available to bidders and expressly included in the Contract Documents.

89.     The Grading Plan and Site Plan clearly reveal a scope of work that encompasses an area surrounding *both* playing fields and all areas in between.

90.     HEC represented and warranted in the Contract that it had carefully examined all plans, specifications, contract documents, and the worksite – and from its own investigations satisfied itself as to the nature, location, and quantity of the work.

91.     On or about May 25, 2004, HEC's representative, Lenardson, met with the Project Engineer, Jeffrey Kevan.

92.     At this pre-construction meeting the two men reviewed the Site Plan, Grading Plan, and numerous other drawings in order to confirm the limit of clearing and scope of work.

93.     During this meeting, Mr. Kevan and Mr. Lenardson discussed and confirmed where the *initial* limit of clearing would be *prior to* the acquisition of environmental permits, and then where the *final* limit of clearing would be *after* the same had been secured.

94.     The limit of clearing and scope of work confirmed by the two men enclosed an area surrounding *both* fields and included all areas in between and around both fields – out to the limit of clearing.

95.     The limit of clearing and scope of work confirmed by the two men did not deviate from the Site Plan, Grading Plan, or Contract *Section 01010 – Summary of Work*, nor did it deviate from any representations made to bidders.

96.     On at least one previous occasion prior to the May 25, 2004 meeting, Lenardson and Kevan had visited the proposed worksite.

97.     HEC actually began work on June 2, 2004.

98.     HEC requested that Franklin Pierce pay $375,000 up front and represented that it would apply this money toward Project costs.

99.     With the understanding that HEC would apply the initial $375,000 toward Project costs, Franklin Pierce made this payment during HEC's first week of work.

100.    On or about June 21, 2004, HEC submitted a payment requisition in the amount of $187,500.

101.    The June 21, 2004 payment requisition represented a request for payment of ninety (90%) percent of the total contract amount.

102.    By June 21, 2004, however (approximately nineteen (19) days into a three-month contract), HEC had not completed $562,500 worth of site work.

103.    On August 18, 2004, HEC resubmitted a requisition for the same amount – *to wit*, $187,500.

104.    The August 18, 2004 payment requisition represented a request for payment of ninety (90%) percent of the total contract amount.

105.    By August 18, 2004, however, HEC had *still* not completed $562,500 worth of site work.  In fact, HEC had not yet performed work amounting to the $375,000 it was paid up front.

106.    HEC submitted nine (9) change orders between July 25 and 28, 2004.  Franklin Piece approved change orders 4, 5, and 6.

107.    Franklin Pierce made repeated requests for backup documentation to support change orders 1, 2, 3, 7, 8 and 9.

108.    HEC did not provide any backup information until the weekly construction meeting on August 25, 2004.  At that meeting, HEC only provided a portion of the requested backup documentation.

109.    Franklin Pierce rejected change orders 1, 2, 3, 7, 8, and 9 in the August 25, 2004 meeting because (a) Contract *Section 01010 – Summary of* Work, the Site Plan, and the Grading Plan included work described in said change orders; and (b) HEC had yet to provide adequate backup documentation for said change orders.

110.    With the exception of work performed under change orders 4, 5, and 6, Franklin Pierce never directed HEC to perform work outside its contractual scope, nor did it ever communicate to HEC that any work it performed would be considered "extra" work that would be paid via change order.

111.    After the August 25, 2004 construction meeting, HEC agreed to complete the work even though change orders 1, 2, 3, 7, 8, and 9 were rejected.  A few hours after the meeting, however, HEC abandoned the project.

112.    On the day HEC abandoned the Project, HEC had not even fully completed 60% of its work under the Contract.  That is, it had not yet fully performed the $375,000 it had been paid up front.

113.    Moreover, Franklin Pierce has, to date, paid approximately $136,066.10 to numerous subcontractors who performed work on the Project but were not paid by HEC. Franklin Pierce has been contacted by other HEC subcontractors who have likewise not been paid by HEC and are currently requesting money from Franklin Pierce.

114.    On the day HEC abandoned its work, the Project site was replete with defects. Among numerous other defects, HEC improperly and incompletely graded the soccer field, requiring 17 loads of material (20 cubic yards per load) to correct the grading so that the fields would drain properly and conform to synthetic turf installation specifications.  HEC improperly installed the main drain line between the fields by failing to lay the appropriate amount of crushed stone and properly mortar drain manholes and pipe joints.  The drainage collector line on the entire western side of the soccer field was improperly installed and caused flooding during a major rainstorm in September.  This collector line had to be repaired and replaced, which entailed pulling up previously laid synthetic turf and then reinstalling the same.  Further, underground electrical conduits were not properly installed per specification detail, silt fences (for erosion) were installed but not properly maintained, stumps and very large boulders were left within the limit of clearing or pushed into wetlands and had to be removed, curbing had to be replaced in many places, and a drain pipe (24" in diameter) traversing the baseball field was

13

abandoned in place, requiring Franklin Pierce to dig it up and then rework/regrade areas previously done by HEC.  Franklin Pierce was also forced to repair and reconstruct the access road around the north end of the soccer field as HEC did not properly grade, install gravel, perform side-slope work, or install the requisite drain lines.  Finally, HEC moved a large amount of material to the south end of the fields that was neither suitable fill nor placed in a workmanlike manner.  At a minimum, Franklin Pierce has expended hundreds of thousands of dollars in order to correct these defects.

115.    In addition, HEC's abandonment so close to the beginning of the academic year forced Franklin Pierce to pay a premium for completion contractors to finish HEC's scope of work.  Franklin Pierce has been damaged by completion costs and costs to repair defective work that are currently estimated at over $800,000 -- notwithstanding damages sustained for paying subcontractors that HEC failed to pay.

## Count I
## (Breach of Contract)

116.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 80 through 115 as if fully set forth and stated herein.

117.    Franklin Pierce and HEC entered into a Contract by which HEC would perform certain site work by September 1, 2004.

118.    HEC breached the Contract when it (a) performed defective work, (b) failed to timely perform its work, and (c) abandoned the Project on August 25, 2004.

119.    As a direct and proximate result of HEC's multiple breaches, Franklin Pierce has sustained damages in completing HEC's work, repairing HEC's defective work, and paying HEC's unpaid subcontractors.

## Count II
## (<u>Unjust Enrichment</u>)

120.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 80 through 119 as if fully set forth and stated herein.

121.    HEC received $375,000 from Franklin Pierce under the Contract for which it did not convey such a benefit.

122.    HEC is therefore liable to Franklin Pierce for unjust enrichment in an amount of at least $375,000.

## Count III
## (<u>Negligence</u>)

123.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 80 through 122 as if fully set forth and stated herein.

124.    HEC owed a duty to perform its site work in accordance with the proper standard of reasonable care.

125.    HEC negligently breached this duty when it carelessly and defectively performed its site work.

126.    HEC's negligence is the proximate cause of the costs sustained by Franklin Pierce in order to correct HEC's work.  HEC's negligence is also the proximate cause of delay sustained by other contractors employed by Franklin Pierce to install the playing fields.  The costs borne by Franklin Pierce to correct negligent work and avoid delay have damaged Franklin Pierce.

## Count IV
## (<u>Constructive Trust</u>)

127.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 80 through 126 as if fully set forth and stated herein.

# 2575050_v3

128.    HEC requested that Franklin Pierce pay $375,000 in advance and promised to use these monies for costs related to the Project.

129.    In reliance on HEC's representation, Franklin Pierce advanced $375,000 to HEC.

130.    The advance payment by Franklin Pierce to HEC amounted to a constructive trust, by which HEC was obligated to apply such funds first to project obligations.

131.    HEC failed to use these monies for project costs and was thereby breached its obligations.

132.    Franklin Pierce has been damaged by HEC's failure to apply funds to pay project costs.

**Count V**
**(Violation of New Hampshire Consumer Protection Act – N.H. RSA ch. 358-A)**

133.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 80 through 132 as if fully set forth and stated herein.

134.    HEC engaged in an unfair act or practice when it knowingly, willfully, and in bad faith submitted two false requisitions for $187,500.

135.    HEC engaged in an unfair act or practice when it knowingly, willfully, and in bad faith submitted change orders 1, 2, 3, 7, 8 and 9 that were intentionally misleading, false, and without grounds.

136.    HEC engaged in an unfair act or practice when it knowingly, willfully, and in bad faith abandoned the Project on the grounds that it was not paid for change orders 1, 2, 3, 7, 8 and 9.

137.    As a direct and proximate result of these unfair and deceptive acts, Franklin Pierce has suffered direct, indirect, and consequential damages.

## Count VI
## (Fraudulent Misrepresentation in Procuring a Contract)

138.     Franklin Pierce incorporates by reference its allegations contained in paragraphs 80 through 137 as if fully set forth and stated herein.

139.     HEC falsely represented to Franklin Pierce during the bidding process that it had the requisite equipment, manpower, and financial strength to complete the Project.

140.     HEC knowingly made such material and false representations so that it could procure the Contract with Franklin Pierce, and with the intent that Franklin Pierce would rely upon such representations.

141.     Franklin Pierce relied upon these representations and could not reasonably have known of their falsity.

142.     Franklin Pierce rightfully and reasonably relied on these and other representations in awarding the Contract to HEC.

143.     As a direct and proximate result of this representation, HEC was awarded the Contract even though it was not financially or otherwise fit to successfully complete the job.  As such, Franklin Pierce has been damaged by the exorbitant costs to repair HEC's defects, complete its abandoned work, and pay its unpaid subcontractors.

**WHEREFORE**, Plaintiff-in-Counterclaim, Franklin Pierce College, prays that this Court

      a.   Enter judgment in favor of Franklin Pierce on Counts I, II, III, V, and VI of this Counterclaim and thereby award Franklin Pierce its compensatory and punitive damages, including all interest, costs, and reasonable attorneys fees;

      b.   Enter judgment in favor of Franklin Pierce on Count IV and thereby impress a constructive trust upon Lenardson for at least $375,000 in favor of Franklin Pierce; and

c.   Enter judgment in favor of Franklin Pierce for such other and further relief as this Court deems just.

**DEMAND FOR JURY TRIAL:**  Plaintiff demands trial by jury of the issues raised in the above Counterclaim.

### THIRD PARTY COMPLAINT OF FRANKLIN PIERCE COLLEGE

For a cause of action and by way of counterclaim, the Defendant/Third-Party Plaintiff, Franklin Pierce College ("Franklin Pierce"), hereby brings this Third-Party Complaint against the Third-Party Defendant, Eric Lenardson ("Lenardson"):

### PARTIES

144.   Franklin Pierce is a New Hampshire Corporation with a principal place of business in Rindge, New Hampshire.

145.   Lenardson is, upon information and belief, a resident of the state of Maine.

### JURISDICTION

146.   This Court has jurisdiction of this matter pursuant to 28 USC § 1332(a).

147.   The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### FACTUAL ALLEGATIONS

148.   Franklin Pierce entered into a contract with HEC and Eric Lenardson ("Lenardson") dated June 9, 2004 (the "Contract") to perform certain site work in connection with the installation of two new, synthetic-turf athletic fields at the College (the "Project").

149.   The Contract required HEC and Lenardson to Complete its work by September 1, 2004.

150.    The Contract price was $625,000.  A true and accurate copy of the Contract is attached hereto as Exhibit A.

151.    Contract Section 01010 – Summary of Work together with the Project drawings represented the scope of work.

152.    Contract Section 01010 – Summary of Work, the Grading Plan, and the Site Plan were part of the materials made available to bidders and expressly included in the Contract Documents.

153.    The Grading Plan and Site Plan clearly reveal a scope of work that encompasses an area surrounding both playing fields and all areas in between.

154.    Lenardson represented and warranted in the Contract that he had carefully examined all plans, specifications, contract documents, and the worksite – and from his own investigations satisfied himself as to the nature, location, and quantity of the work.

155.    On or about May 25, 2004, Lenardson, met with the Project Engineer, Jeffrey Kevan.

156.    At this pre-construction meeting the two men reviewed the Site Plan, Grading Plan, and numerous other drawings in order to confirm the limit of clearing and scope of work.

157.    During this meeting, Mr. Kevan and Lenardson discussed and confirmed where the initial limit of clearing would be prior to the acquisition of environmental permits, and then where the final limit of clearing would be after the same had been secured.

158.    The limit of clearing and scope of work confirmed by the two men enclosed an area surrounding both fields and included all areas in between and around both fields – out to the limit of clearing.

159.    The limit of clearing and scope of work confirmed by the two men did not deviate from the Site Plan, Grading Plan, or Contract Section 01010 – Summary of Work, nor did it deviate from any representations made to bidders.

160.    On at least one previous occasion prior to the May 25, 2004 meeting, Lenardson and Kevan had visited the proposed worksite.

161.    Lenardson actually began work on June 2, 2004.

162.    Lenardson requested that Franklin Pierce pay $375,000 up front and represented that it would apply this money toward Project costs.

163.    With the understanding that Lenardson would apply the initial $375,000 toward Project costs, Franklin Pierce made this payment during Lenardson's first week of work.

164.    On or about June 21, 2004, Lenardson submitted a payment requisition in the amount of $187,500.

165.    The June 21, 2004 payment requisition represented a request for payment of ninety (90%) percent of the total contract amount.

166.    By June 21, 2004, however (approximately nineteen (19) days into a three-month contract), Lenardson had not completed $562,500 worth of site work.

167.    On August 18, 2004, Lenardson resubmitted a requisition for the same amount – to wit, $187,500.

168.    The August 18, 2004 payment requisition represented a request for payment of ninety (90%) percent of the total contract amount.

169.    By August 18, 2004, however, Lenardson had still not completed $562,500 worth of site work.  In fact, Lenardson had not yet performed work amounting to the $375,000 it was paid up front.

170.    Lenardson submitted nine (9) change orders between July 25 and 28, 2004. Franklin Piece approved change orders 4, 5, and 6.

171.    Franklin Pierce made repeated requests for backup documentation to support change orders 1, 2, 3, 7, 8, and 9.

172.    Lenardson did not provide any backup information until the weekly construction meeting on August 25, 2004.  At that meeting, Lenardson only provided a portion of the requested backup documentation.

173.    Franklin Pierce rejected change orders 1, 2, 3, 7, 8, and 9 in the August 25, 2004 meeting because (a) Contract Section 01010 – Summary of Work, the Site Plan, and the Grading Plan included work described in said change orders; and (b) Lenardson had yet to provide adequate backup documentation for said change orders.

174.    With the exception of work performed under change orders 4, 5, and 6, Franklin Pierce never directed Lenardson to perform work outside its contractual scope, nor did it ever communicate to Lenardson that any work it performed would be considered "extra" work that would be paid via change order.

175.    After the August 25, 2004 construction meeting, Lenardson agreed to complete the work even though change orders 1, 2, 3, 7, 8, and 9 were rejected.  A few hours after the meeting, however, Lenardson abandoned the project.

176.    On the day Lenardson abandoned the Project, Lenardson had not even fully completed 60% of its work under the Contract.  That is, it had not yet fully performed the $375,000 it had been paid up front.

177.    Moreover, Franklin Pierce has, to date, paid approximately $136,066.10 to numerous subcontractors who performed work on the Project but were not paid by Lenardson.

Franklin Pierce has been contacted by other Lenardson subcontractors who have likewise not been paid by Lenardson and are currently requesting money from Franklin Pierce.

178.    On the day Lenardson abandoned its work, the Project site was replete with defects.  Among numerous other defects, Lenardson improperly and incompletely graded the soccer field, requiring 17 loads of material (20 cubic yards per load) to correct the grading so that the fields would drain properly and conform to synthetic turf installation specifications. Lenardson improperly installed the main drain line between the fields by failing to lay the appropriate amount of crushed stone and properly mortar drain manholes and pipe joints.  The drainage collector line on the entire western side of the soccer field was improperly installed and caused flooding during a major rainstorm in September.  This collector line had to be repaired and replaced, which entailed pulling up previously laid synthetic turf and then reinstalling the same.  Further, underground electrical conduits were not properly installed per specification detail, silt fences (for erosion) were installed but not properly maintained, stumps and very large boulders were left within the limit of clearing or pushed into wetlands and had to be removed, curbing had to be replaced in many places, and a drain pipe (24" in diameter) traversing the baseball field was abandoned in place, requiring Franklin Pierce to dig it up and then rework/regrade areas previously done by Lenardson.  Franklin Pierce was also forced to repair and reconstruct the access road around the north end of the soccer field as Lenardson did not properly grade, install gravel, perform side-slope work, or install the requisite drain lines. Finally, Lenardson moved a large amount of material to the south end of the fields that was neither suitable fill nor placed in a workmanlike manner.  At a minimum, Franklin Pierce has expended hundreds of thousands of dollars in order to correct these defects.

179.     In addition, Lenardson's abandonment so close to the beginning of the academic year forced Franklin Pierce to pay a premium for completion contractors to finish Lenardson's scope of work.  Franklin Pierce has been damaged by completion costs and costs to repair defective work that are currently estimated at over $800,000 -- notwithstanding damages sustained for paying subcontractors that Lenardson failed to pay.

### Count I
### (Breach of Contract)

180.     Franklin Pierce incorporates by reference its allegations contained in paragraphs 144 through 179 as if fully set forth and stated herein.

181.     Franklin Pierce and Lenardson entered into a Contract by which Lenardson would perform certain site work by September 1, 2004.

182.     Lenardson breached the Contract when it (a) performed defective work, (b) failed to timely perform its work, and (c) abandoned the Project on August 25, 2004.

183.     As a direct and proximate result of Lenardson's multiple breaches, Franklin Pierce has sustained damages in completing Lenardson's work, repairing Lenardson's defective work, and paying Lenardson's unpaid subcontractors.

### Count II
### (Unjust Enrichment)

184.     Franklin Pierce incorporates by reference its allegations contained in paragraphs 144 through 184 as if fully set forth and stated herein.

185.     Lenardson received $375,000 from Franklin Pierce under the Contract for which it did not convey such a benefit.

186.     Lenardson is therefore liable to Franklin Pierce for unjust enrichment in an amount of at least $375,000.

## Count III
## (<u>Negligence</u>)

187.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 144 through 186 as if fully set forth and stated herein.

188.    Lenardson owed a duty to perform its site work in accordance with the proper standard of reasonable care.

189.    Lenardson negligently breached this duty when it carelessly and defectively performed its site work.

190.    Lenardson's negligence is the proximate cause of the costs sustained by Franklin Pierce in order to correct Lenardson's work.  Lenardson's negligence is also the proximate cause of delay sustained by other contractors employed by Franklin Pierce to install the playing fields. The costs borne by Franklin Pierce to correct negligent work and avoid delay have damaged Franklin Pierce.

## Count IV
## (<u>Constructive Trust</u>)

191.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 144 through 190 as if fully set forth and stated herein.

192.    Lenardson requested that Franklin Pierce pay $375,000 in advance and promised to use these monies for costs related to the Project.

193.    In reliance on Lenardson's representation, Franklin Pierce advanced $375,000 to Lenardson.

194.    The advance payment by Franklin Pierce to Lenardson amounted to a constructive trust, by which Lenardson was obligated to apply such funds first to project obligations.

195.    Lenardson failed to use these monies for project costs and thereby breached its obligations.

196.    Franklin Pierce has been damaged by Lenardson's failure to apply funds to pay project costs.

### Count V
### (Violation of New Hampshire Consumer Proteection Act – N.H. RSA ch. 358-A)

197.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 144 through 196 as if fully set forth and stated herein.

198.    Lenardson engaged in an unfair act or practice when it knowingly, willfully, and in bad faith submitted two false requisitions for $187,500.

199.    Lenardson engaged in an unfair act or practice when it knowingly, willfully, and in bad faith submitted change orders 1, 2, 3, 7, 8, and 9 that were intentionally misleading, false, and without grounds.

200.    Lenardson engaged in an unfair act or practice when it knowingly, willfully, and in bad faith abandoned the Project on the grounds that it was not paid for change orders 1, 2, 3, 7, 8, and 9.

201.    As a direct and proximate result of these unfair and deceptive acts, Franklin Pierce has suffered direct, indirect, and consequential damages.

### Count VI
### (Fraudulent Misrepresentation in Procuring a Contract)

202.    Franklin Pierce incorporates by reference its allegations contained in paragraphs 144 through 201 as if fully set forth and stated herein.

203.    Lenardson falsely represented to Franklin Pierce during the bidding process that he had the requisite equipment, manpower, and financial strength to complete the Project.

204.    Lenardson knowingly made such material and false representations so that he could procure the Contract with Franklin Pierce, and with the intent that Franklin Pierce would rely upon such representations.

205.    Franklin Pierce relied upon these representations and could not reasonably have known of their falsity.

206.    Franklin Pierce rightfully and reasonably relied on these and other representations in awarding the Contract to Lenardson.

207.    As a direct and proximate result of this representation, Lenardson was awarded the Contract even though he was not financially or otherwise fit to successfully complete the job. As such, Franklin Pierce has been damaged by the exorbitant costs to repair Lenardson's defects, complete his abandoned work, and pay his unpaid subcontractors.


**WHEREFORE**, Plaintiff-in-Counterclaim, Franklin Pierce College, prays that this Court

> d.   Enter judgment in favor of Franklin Pierce on Counts I, II, III, V, and VI of this Third Party Complaint and thereby award Franklin Pierce its compensatory and punitive damages to be proven at trial, including all interest, costs, and reasonable attorneys fees;

> e.   Enter judgment in favor of Franklin Pierce on Count IV and thereby impress a constructive trust upon Lenardson for at least $375,000 in favor of Franklin Pierce; and

> f.   Enter judgment in favor of Franklin Pierce for such other and further relief as this Court deems just.

**DEMAND FOR JURY TRIAL:**  Plaintiff demands trial by jury of the issues raised in

the above Third-Party Claim.


FRANKLIN PIERCE COLLEGE

By its attorneys,

HOLLAND & KNIGHT LLP


/s/ Stanley A. Martin
Stanley A. Martin
NH Bar No. 1624
10 St. James Avenue
Boston, MA  02116
Tel:  617-523-2700
Email:  stan.martin@hklaw.com

January 31, 2005

# 2575050_v3

## CERTIFICATE OF SERVICE, LR 5.1(d), Fed R. Civ. P. 5

I certify that a true and accurate copy of the within Answer, Counterclaim, and Third-Party Complaint of Franklin Pierce College was served by virtue of electronically filing this document with the Court on the 31st day of January, 2005 to:

*Counsel for H.E. Contracting*
William J. Edwards
Wiggin & Nourie, PA
670 Commercial Street, Suite 305
P.O. Box 808
Manchester, NH 03105-0808

*Counsel for Franklin Pierce College*
Joseph S. Hoppock
Goodnow, Arwe, Ayer, Prigge & Hoppock
P.O. box 505
Keene, NH 03431

*Counsel for H.E. Contracting*
Thomas J. Pappas
Wiggin & Nourie, PA
670 Commercial Street, Suite 305
P.O. Box 808
Manchester, NH 03105-0808

/s/ Stanley A. Martin
Stanley A. Martin